# 23-7466-cv

## United States Court of Appeals

*for the*

## Second Circuit

2939, LLC, DAVID WEISS, LINDA WEISS, INDUSTRIA SUPERSTUDIO
OVERSEAS, INC., INDUSTRIA GROUP, LLC, INDUSTRIA @ SEA, INC.,
BORGO GUGLIELMO, LLC, MASSACHUSETTS BAY
INSURANCE COMPANY,

*Plaintiff-Appellants,*

– v. –

CONTINENTAL INDEMNITY COMPANY, BULSON MANAGEMENT LLC,
RI XIAN WANG, MEI YING LIN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANTS

SIM R. SHAPIRO
STRIKOWSKY DRACHMAN
& SHAPIRO, PLLC
*Attorneys for Plaintiff-Appellants*
111 Broadway, Suite 1103
New York, New York 10006
(212) 970-7111

COUNSEL PRESS    (800) 4-APPEAL • (326183)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................... iii

PRELIMINARY STATEMENT .................................................... 1

QUESTIONS PRESENTED ......................................................... 3

STATEMENT OF FACTS ............................................................ 4

    The Underlying Incident ........................................................ 4

    The Continental Policy .......................................................... 5

    The Underlying Action .......................................................... 5

    The Southern District Action ................................................ 6

    The Within Action ................................................................ 10

DECISION OF THE COURT BELOW .................................... 10

ARGUMENT ............................................................................... 14

POINT I       STANDARD OF REVIEW ..................................... 14

POINT II     THE RULING OF HON. FURMAN IN THE SOUTHERN
              DISTRICT ACTION MANDATED THAT IT NOT HAVE
              PRECLUSIVE EFFECT ........................................... 15

POINT III    THE COURT OF APPEALS OF THE STATE OF NEW
              YORK HAS HELD THAT PRECLUSIVE EFFECT
              SHOULD NOT BE GIVEN TO A DEFAULT JUDGMENT
              AGAINST AN INSURED TORTFEASOR IN A
              DECLARATORY JUDGMENT ACTION PURSUANT |
              TO N.Y. INSURANCE LAW §3420(b) ........................ 18

POINT IV   THE COURT BELOW ERRED IN FINDING THAT THE
              DOCTRINE OF JUDICIAL ESTOPPEL DID NOT APPLY
              TO THE INCONSISTENT LEGAL POSITIONS TAKEN BY
              CONTINENTAL .......................................................... 26

POINT V    THE JUDGMENT OF THE COURT BELOW SHOULD BE
              REVERSED BECAUSE ALLOWING A DEFAULT
              JUDGMENT AGAINST AN INSURED IN A PRIOR

DECLARATORY JUDGMENT ACTION TO PRECLUDE
A CLAIMANT FROM BRINGING A DIRECT ACTION
PURSUANT TO N.Y. INS. LAW §3420(b) WOULD
FRUSTRATE THE PUBLIC POLICY OBJECTIVES OF THE
STATUTE ........................................................................................29

POINT VI     THE COURT BELOW ERRED IN APPLYING RES JUDICATA
BECAUSE THE PLAINTIFFS-APPELLANTS HAVE
INDEPENDENT CLAIMS THAT COULD NOT HAVE BEEN
RAISED BEFORE HON. FURMAN ...........................................33

POINT VII    RES JUDICATA SHOULD NOT HAVE BEEN APPLIED
TO THE DEFAULT JUDGMENT BECAUSE
CONTINENTAL PROVIDED INCORRECT
INFORMATION ABOUT THE PREMIUMS CHARGED
FOR ITS POLICY..........................................................................37

POINT VIII   TO THE EXTENT THAT THIS COURT IS NOT INCLINED TO
REVERSE THE JUDGMENT OF THE COURT BELOW, IT
SHOULD CERTIFY FOR REVIEW BY THE COURT OF
APPEALS OF THE STATE OF NEW YORK WHETHER AN
EMPLOYER'S FAILURE TO REPORT A WORKER WHEN
PROCURING AN EMPLOYER'S LIABILITY POLICY IS A
BASIS FOR A DENIAL OF COVERAGE...................................42

CONCLUSION .......................................................................................53

TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Allaire Corp. v. Okumus,
    433 F.3d 248 (2nd Cir. 2006) ...................................................... 15-16

Am. Lung Ass'n v. Reilly,
    962 F.2d 258 (2d Cir. 1992) ........................................................ 9

Boles v. The Dormer Giant, Inc.,
4 N.Y.3d 235 (2005) ...........................................................................51

Clark v. Cavalry Portfolio Servs.,
    2017 US Dist LEXIS 213215 ...................................................... 25

Cont'l Ins. Co. v. Est. of Benton,
    896 F.Supp. 272 (N.D.N.Y. 1995) ............................................. 47

Dekom v. Fannie Mae,
    846 F. App'x 14 [2nd Cir. 2021] ............................................... 25

Fed. Ins. Co. v. Kingsbury Props., Ltd.,
    Nos. 90-CV-6211 (JMC), 90-CV-6357 (JMC), 1992 WL 316163
    (S.D.N.Y. Oct. 21, 1992) ........................................................ 9, 10

Federated Dep't Stores, Inc. v. Moitie,
    452 U.S. 394 (1981) .................................................................. 14

Frost v. New York City Police Dep't,
    980 F.3d 231 (2nd Cir. 2020) .................................................... 29

Gold v. NY Life Ins. Co.,
    730 F.3d 137 (2nd Cir. 2013) .................................................... 18

Ill. Union Ins. Co. v. Acer Restoration LLC,
    No. 20-CV-1086 (LGS), 2020 WL 5876248 (S.D.N.Y. Oct. 2, 2020) ............... 8

John Wiley & Sons, Inc. v. Book Dog Books, LLC,
    315 F.R.D. 169 (S.D.N.Y. 2016) .............................................. 9

King v. Galluzzo Equip. & Excavating, Inc.,
    2001 US Dist LEXIS 18344] ................................................ 40-41

Liona Corp. v. PCH Assoc. (In re PCH Assoc.),
    949 F.2d 585 (2nd Cir. 1991) ............................................................ 18

Lipman v Rodenbach,
    852 F. App'x 578 (2nd Cir. 2021) ..................................................... 33

Male v. Tops Markets, LLC,
    354 F. App'x 514 (2d Cir. 2009) ...................................................... 14

Mineweaser v. One Beacon Ins. Co.,
    2018 US Dist. LEXIS 91203 ............................................................. 32

Mitlof,
    193 F.R.D. ......................................................................................... 8

Prats v. Port Authority of N.Y. and New Jersey,
    315 F.3d 146 (2nd Cir. 2002) ........................................................... 44

Norguard Ins. Co. v. Lopez,
    2017 WL 354209 (E.D.N.Y. 2017) ................................................... 53

Pike v. Freeman,
    266 F.3d 78 (2d Cir. 2001) ............................................................... 12

Preserver Ins. Co. v. Ryba,
    10 N.Y.3d 635, 636 (2008) ............................................................... 45

Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.,
    725 F.2d 871 (2d Cir. 1984) ...................................................... 7-8, 8

Saud v. Bank of NY,
    929 F.2d 916 (2nd Cir.1991) ............................................................ 41

Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.,
    922 F.2d 92, 97 (2d Cir. 1990).......................................................... 8

**State Cases**

Albanez v. Charles,
    134 A.D.3d 657 (2nd Dept. 2015) ................................................... 25

Am. Home Assurance Co. v. Highrise Const. Co.,
    111 A.D.3d 446 (1st Dept. 2013) ..................................................... 45

Am. Motorists Ins. Co. v. N. Country Motors, Ltd.,
    57 A.D.2d 158 (3rd Dept. 1977) ......................................... 20

Arida v. Essex Ins. Co.,
    299 A.D.2d 902 (4th Dept. 2002) ................................. 23, 24

Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.,
    27 A.D.3d 84 (1st Dept. 2005) (emphasis in original) .............................. passim

Carlson v. Am. Intl. Group, Inc.,
    30 N.Y.3d 288 (2017) .................................................. 31, 33

Commrs. of State Ins. Fund v. Low,
    3 N.Y.2d 590 (1958) ......................................................... 24

Cont. Ins. Co. v State,
    99 N.Y.2d 196 (2002) ....................................................... 48

Continental Ins. Co. v. State,
    9 N.Y.2d 196 (2002) ......................................................... 51

County of Nassau,
    46 N.Y.2d 1028 (1979) .................................................... 38

Cruz v Bank of N.Y. Mellon,
    218 A.D.3d 638 (2nd Dept. 2023) .................................. 30

D'Arata v. New York Cent. Mut. Fire Ins. Co.,
    76 N.Y.2d 659 (1990) ......................................... 22, 26, 36

Eaddy v. U.S. Bank N.A.,
    180 A.D.3d 756, 758 (2nd Dept. 2020) ........................... 25

Fuller v. KFG Land I, LLC,
    189 A.D.3d 666 (1st Dept. 2020) ..................................... 53

General Counsel Opinion 6-28-88,
    1988 WL 1502848 ..................................................... 49, 50

General Counsel Opinion 9-29-2000,
    2000 WL 34630136 ....................................................... 46

J-T Associates v. Hudson River-Black River Regulating Dist.,
    175 A.D.2d 438 (3rd Dept. 1991) ..................................... 27

JT Magen v. Hartford Fire Ins. Co.,
 64 A.D.3d 266 (1st Dept. 2009) ...........................................................36

Likewise, in W. St. Props., LLC v. Am. States Ins. Co.,
 124 A.D.3d 876 (2nd Dept. 2015) ....................................................... 21

Moreover, NY Cent. Mut. Fire Ins. Co. v. Kilmurray,
 181 A.D.2d 40 (3rd Dept. 1992) ........................................................ 26

Motor Veh. Acc. Indem. Corp. v. Natl. Grange Mut. Ins. Co.,
 19 N.Y.2d 115 (1967) ........................................................................ 20

New York Pub. Int. Rsch. Grp., Inc. v. New York State Dep't of Ins.,
 66 N.Y.2d 444 (1985) ........................................................................ 47

Oest v. Excelsior Ins. Natl.-Nedelanden N. Am. Prop. & Cas. Group,
 170 Misc.2d 787 (App. Term 2nd Dept.1996) ................................... 26

Paramount Pictures Corp. v. Allianz Risk Transfer AG,
 96 N.E.3d 737 (N.Y. 2018) ........................................................... 12-13

People ex rel. Spitzer v. Applied Card Sys., Inc.,
 894 N.E.2d 1 (N.Y. 2008) ............................................................ 13, 14

Riv. View at Patchogue, LLC v. Hudson Ins. Co.,
 122 A.D.3d 824 (2nd Dept. 2014) ..................................................... 26

Spencer v. Tower Ins. Group Corp.,
 130 A.D.3d 709 (2nd Dept 2015) ...................................................... 26

Stacey "O" v. Donald "P",
 137 A.D.2d 965 (3rd Dept. 1988) ...................................................... 19

Tower Ins. Co. of NY v. Einhorn,
 133 A.D.3d 841 (2nd Dept. 2015) ..................................................... 23

United Services Auto. Ass'n v. Graham,
 21 A.D.2d 657 (1st Dept. 1964) ........................................................ 27

W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.,
 290 A.D.2d 278 (1st Dept. 2002) ...................................................... 36

West Bldg. Restoration Co. v. Lovell Safety Mgmt. Co., LLC,
 61 A.D.3d 1095, 1101 (3rd Dept. 2009) ........................................... 45

Zappone v. Home Ins. Co.,
   55 N.Y.2d 131 (1982) ......................................................................... 36

**State Statutes**

CPLR 5015 ........................................................................................ 27

Labor Law §§ 240 and 241 ................................................................. 52

N.Y. Ins. Law § 167, subd. 1 .......................................................... 20, 21

N.Y. Ins. Law § 1113 .................................................................. passim

N.Y. Ins. Law § 3420 .................................................................. passim

Workers Compensation Law § 11 ........................................................ 52

Workers Compensation Law § 17:2 ................................................passim

Workers Compensation Law § 54 ................................................. passim

**Rules**

F.R.C.P. Rule 1 ................................................................................. 2

F.R.C.P. Rule12 ........................................................................ passim

F.R.C.P. Rule 24 ....................................................................... passim

## PRELIMINARY STATEMENT

The within brief is submitted on behalf of the plaintiffs-appellants 2939, LLC, David Weiss, Linda Weiss ("2939, et al."); Industria Superstudio Overseas, Inc., Industria World LLC, Industria @ Sea, Inc., Borgo Gugliemo, LLC ("Industria, et al."); and Massachusetts Bay Insurance Company ("MBIC") (collectively the "plaintiffs-appellants"). It is respectfully submitted that this Court should reverse the judgment of the Court below entered on September 22, 2023 that dismissed the plaintiffs-appellants' complaint as against the defendant-respondent Continental Indemnity Company ("Continental"). [A. 744].[1]

As discussed below, the within appeal involves whether the Judge in the within action was permitted to apply the doctrine of *res judicata* based on a default judgment in a prior action when the Judge in the prior action had explicitly ruled that it would not have such preclusive effect. In her decision granting Continental's motion to dismiss, Hon. Rachel P. Kovner of the United States District Court for the Eastern District of New York acknowledged that in denying the plaintiffs-appellants' motion to intervene in the action in the United States District Court for the Southern District of New York, Hon. Jesse M. Furman of the latter Court had explicitly held that the denial of intervention, and any judgment against the defendant therein, Bulson Management, LLC. ("Bulson"), would not impact the plaintiffs-appellants'

---

[1] References to the Appendix will be designated as [A. _____].

1

interests. [A. 156-57]. Yet, later in her decision, Hon. Kovner held that the ruling of Hon. Furman did have a *res judicata* effect on the plaintiffs-appellants. [A. 757-58]. It is respectfully submitted that this alone warrants reversal, especially since the Federal Rules of Civil Procedure are to be "construed, administered, and employed by the court and the parties to secure the just … determination of every action and proceeding." F.R.C.P. Rule 1.

Moreover, as discussed below, the language of Hon. Furman's ruling was hardly the only basis for reversal. The law in New York is well-settled that an insured-tortfeasor's default in an earlier declaratory judgment action cannot be accorded preclusive effect in a tort-claimant's N.Y. Ins. Law § 3420(b) direct action; the doctrine of judicial estoppel would warrant reversal since the defendant-respondent took inconsistent positions in the two actions; permitting the prior ruling to have *res judicata* effect would frustrate public policy; because the plaintiffs-appellants have claims in this action that could not have been raised by Bulson, *res judicata* has no applicability in the case at bar; Bulson may have paid additional premiums under an unlawful program for which Continental was fined; and permitting the ruling to stand could throw the New York State Workers Compensation system into disarray. Alternatively, this Court should certify the question of whether the failure to notify an insurer of a specific employee on the

2

payroll is a basis for disclaiming coverage to the Court of Appeals of the State of New York.

## QUESTIONS PRESENTED

1) Did the Court below (Kovner, J.) err in giving *res judicata* effect to the order of the United States District Court for the Southern District of New York (Furman, J.) where:

> a) Hon. Furman held that his ruling would not impair the interests of the plaintiffs-appellants in a future proceeding;
> b) The law in New York is well-settled that an insured-tortfeasor's default in an earlier declaratory judgment action cannot be accorded preclusive effect in a tort-claimant's N.Y. Ins. Law § 3420(b) direct action;
> c) The doctrine of judicial estoppel should prohibit the prior ruling from having a preclusive effect since the defendant-respondent took inconsistent positions in the two actions, first arguing against intervention because the ruling would not have a preclusive effect and then arguing the opposite in this action;
> d) Permitting the prior ruling to have *res judicata* effect would frustrate public policy;
> e) The plaintiffs-appellants have claims in this action that could not have been raised by Bulson;
> f) Bulson may have paid additional premiums under an unlawful program for which Continental was fined; and
> g) Permitting an insurer to disclaim coverage for the purported failure to disclose an employee could throw the New York Workers Compensation System into disarray.

It is respectfully submitted that the answer must be in the affirmative and the judgment of the Court below should be reversed and the complaint reinstated.

3

2) In the alternative, should this Court certify the question of whether the failure to notify an insurer of a specific employee is a basis for disclaiming coverage to the Court of Appeals of the State of New York?

It is respectfully submitted that the answer should be in the affirmative.

## STATEMENT OF FACTS

The Underlying Incident

This declaratory judgment action stems from an incident in which Ri Xian Wang ("Wang") "fell from a ladder and suffered paralyzing injuries while performing construction work for his employer, Bulson Management, LLC." [A. 745]. The issue of who employed Mr. Wang at the time of the accident was the subject of a disputed claim at the New York State Workers Compensation Board ("WCB"). [A. 483-87]. Although Bulson's principal, Graham Bruwer, has always maintained that Mr. Wang worked for Elite Drywall, LLC on the date of the incident (Mr. Wang had admitted that he worked "on and off" for Bulson [A. 484]), the Workers Compensation Board determined that, for the purposes of awarding benefits, Bulson was the employer. [A. 483-87]. Interestingly, while Continental successfully appealed the weekly award determined by the WCB, it failed to raise the issue of fraud or material misrepresentation. Id.

4

<u>The Continental Policy</u>

At the time of the accident, Continental insured Bulson under "New York Workers' Compensation and Employers Liability Policy" bearing policy number 46-227428-01-02 with a policy period of May 7, 2016-May 7, 2017 (the "Policy" or the "Continental Policy.") [A. 110-33]. The Policy provided unlimited Workers' Compensation ("WC") and Employers' Liability ("EL") coverage on a statutorily approved form provided by the New York Compensation Insurance Ratings Bureau ("NYCIRB"), of which Continental is a member.

<u>The Underlying Action</u>

Mr. Wang filed a personal injury action in the Supreme Court of the State of New York, County of Kings, along with a derivate claim on behalf of Mei Ying Lin against Industria, et al. and 2939, et al. under Index Number 519101/2016 (the "underlying action"). Industria, et al. and 2939, et al. then filed a third-party complaint against Bulson, claiming that Bulson was liable for common law and contractual contribution and indemnity. [A. 199-206]. A judgment in the underlying action in the amount of $21,000,000 was entered in favor of the plaintiffs in the underlying action against Industria, et al and 2939, et al., which, in turn, obtained a judgment of common law and contractual indemnity against Bulson in the amount of $21,000,000. [A. 722-25]. A total of $5,000,000 of the judgment of indemnity has been paid by Bulson's general liability and excess insurers on behalf of Industria, et

al, and 2939, et al. to the plaintiffs in the underlying action. The remaining $16,000,000 of the judgment of common law and contractual indemnity in the third-party action against Bulson remains unpaid. [A. 739].

The Southern District Action

On or about May 4, 2020 - over two years after the workers compensation proceeding was resolved - Continental filed a complaint in the United States District Court for the Southern District of New York against Bulson and Wang, Continental Indemnity Company, LLC v. Bulson Management, LLC and Ri Xian Wang, Case No. 1:20-cv-03479 (S.D.N.Y.) ("Southern District action"). On May 14, 2020, an amended complaint was filed. The action sought, *inter alia*, a declaration that the Continental Policy did not provide employer's liability coverage for the claims asserted against Bulson in the Third-Party Complaint in the underlying action and asserted fraudulent inducement, breach of contract claims, and unjust enrichment causes of action, in which it demanded that Bulson return over $1,000,000 for WC benefits that Continental paid to Wang. [A. 97-108]. Continental claimed it owed no coverage because Bulson had fraudulently concealed that Wang was its employee based on the fact that: (a) the WCB had determined that Bulson was Wang's employer; and (b) Bulson had not identified Wang as an employee in its payroll submissions to Continental. Although employee rolls are rarely static for any employer of laborers, and despite the Continental Policy's provision of post-policy

6

period audits and adjustment of premiums, Continental alleged that the failure to disclose Wang as an employee warranted a retroactive denial of all coverage arising out of the incident in which Wang was allegedly injured. [A. 97-108]. The action named Bulson and Wang as defendants, but failed to name the plaintiffs-appellants, most of whom were parties to the underlying action, as interested parties. Id.

Bulson did not initially appear in the Southern District action and as the plaintiffs-appellants were not named as parties, they moved to intervene in the action. Hon. Furman denied the motion, however. [A. 150-59]. In the decision, Hon. Furman ruled that the movants were not entitled to intervention as of right:

> Under Rule 24(a)(2), a court must grant intervention if the movant can demonstrate that "(1) the application is timely; (2) 'the applicant claims an interest relating to the property or transaction which is the subject matter of the action . . . .'; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party." Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984) (quoting Fed. R. Civ. P. 24(a)(2)).
>
> ***
>
> Here, neither Industria nor MBIC satisfies Rule 24(a)'s second element. "The term 'interest' in this context defies simple definition," yet the Second Circuit has observed that the interest must be "direct, as opposed to remote or contingent" and "significantly protectable." Restor-A-Dent, 725 F.2d at 874. "[A]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.'" Mitlof, 193

7

F.R.D. at 160 (*quoting* Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990)). Applying these principles, courts have denied motions to intervene where the movant's interests are contingent upon the outcome of pending or future litigation. *See, e.g.,* Wash. Elec. Coop., Inc., 922 F.2d at 97 ("[The proposed intervenor]'s interest is based upon a double contingency: [the plaintiff] first must win a judgment against [the defendant], and the Board then must determine that ratepayers are entitled to a percentage of that recovery."); Restor-A-Dent, 725 F.2d at 875 (finding that the proposed intervenor's interest "depend[ed] upon two contingencies," a jury verdict and a finding "that [the proposed intervenor] [wa]s not responsible for indemnification of certain types of losses under the terms of the policy"). Courts also deny intervention in cases where the "resolution of th[e] action will not change the manner in which Movants are situated with respect to" the party the movants seek to intervene on behalf of. Ill. Union Ins. Co. v. Acer Restoration LLC, No. 20-CV-1086 (LGS), 2020 WL 5876248, at *3 (S.D.N.Y. Oct. 2, 2020).

These principles doom Movants' claims to intervention as of right. Movants contend that they have an interest in Bulson's ability to satisfy a potential judgment in the Wang Litigation. MBIC Mem. 5. *This interest, however, "depends upon two contingencies,"* Restor-A-Dent, *725 F.2d at 875, in the Wang Litigation: the success of Wang's claims against Industria and the success of Industria's third-party claims against Bulson. This double contingency undermines Movants' argument that they have a direct and significantly protectable interest in this litigation.* See, e.g., Am. Lung Ass'n v. Reilly, 962 F.2d 258, 261 (2d Cir. 1992) (affirming a district court's denial of a motion to intervene in which the proposed intervenors' interest relied on a "'double contingency' of events"); John Wiley & Sons, Inc. v. Book Dog Books, LLC, 315 F.R.D. 169, 175 (S.D.N.Y. 2016) (denying a motion to intervene premised on a double contingency); Fed. Ins. Co. v. Kingsbury Props., Ltd., Nos. 90-CV-6211

8

> (JMC), 90-CV-6357 (JMC), 1992 WL 316163, at *3
> (S.D.N.Y. Oct. 21, 1992) ("The tort claimants' interest in
> this case is plainly contingent on both their ultimate
> success in the state tort action and their failure to satisfy
> this judgment against the insureds.").

[A. 153-154] (emphasis added).

Hon. Furman held that there would be no prejudice to the plaintiffs-appellants

the denial of intervention, as the default taken against Bulson would not affect them:

> Industria and MBIC fail to demonstrate that their "interest
> could be seriously impaired by the disposition of this
> litigation." MBIC Mem. at 5. *Under New York law, a*
> *default judgment entered against a party in one action*
> *does not have preclusive effect on a non-party to that*
> *action in a subsequent litigation.* See, e.g., Rojas v.
> Romanoff, 186 A.D.3d 103, 109, (N.Y. App. Div. 2020);
> Amalgamated Bank v. Helmsley-Spear, Inc., 109 A.D.3d
> 418, 419 (N.Y. App. Div. 2013). *Thus, a default judgment*
> *in this action would not impair Industria's or MBIC's*
> *interests in any meaningful way.*

[A. 156-57] (emphasis added).

Bulson belatedly appeared in the action but by order dated May 31, 2022,

Hon. Furman denied Bulson's motion, drawing a distinction between the WC and

EL portions of the Continental Policy. [A. 272-88]. The Court held, *inter alia*, that

Continental could deny defense and indemnity to Bulson in the underlying action.

Id. The Court acknowledged precedent stating that the WCB's position is that

policies can be canceled only prospectively. Id. However, the court further found

that such authority applied only to the WC portion of the Policy, not the EL portion.

*Id*.

9

<u>The Within Action</u>

The plaintiffs-appellants' complaint in this action was originally commenced in the Supreme Court of the State of New York, Kings County on December 14, 2020. [A. 23-33]. The complaint sought a declaratory judgment that Continental insured Bulson without reservation of rights at the time of the incident under a "1B" or EL policy and that Continental therefore owes Bulson defense and indemnity in the underlying action. Continental then removed the action to the Court below and subsequently moved to dismiss the complaint pursuant to F.R.C.P. §12(b)(6).

## **<u>DECISION OF THE COURT BELOW</u>**

In a decision dated September 21, 2023, the United States District Court for the Eastern District of New York (Kovner, J.) granted the defendant-respondent Continental's motion to dismiss the complaint pursuant to F.R.C.P. 12(b)(6). In granting the motion, Hon. Kovner noted Hon. Furman's prior denial of intervention due to the aforementioned "two contingencies:"

> Judge Furman concluded that the movants were not entitled to intervene as of right because they did not have a "direct and significantly protectable interest in this litigation." *Id.* at 5. He observed that any interest of Industria and its insurer in the dispute over Continental's coverage of Bulson in Wang's state-court suit "depends on two contingencies" in the state-court case: "the success of Wang's claims against Industria *and* the success of

10

Industria's third-party claims against Bulson." *Ibid.* to the In Judge Furman's view, that doubly-contingent interest was too remote and contingent to support intervention as of right.

[A. 747].

Even so, Hon. Kovner acknowledged the plaintiffs-appellants were entitled to bring the within action because:

> While plaintiffs had not obtained a judgment against Bulson when they first brought this suit against Continental, plaintiffs obtained judgment against Bulson in the Supreme Court of the State of New York, Kings County, on their third-party claims for common-law indemnification and contractual indemnification on June 23, 2023, while this action was pending.

[A. 751].

As such, the Court below held, "plaintiffs have standing to maintain this action, and may bring their breach-of-contract and declaratory-judgment claims." [A. 752]. In turn, the dismissal of the action by the Court below was not on the basis of lack of standing – which essentially formed the basis of Hon. Furman's denial of the intervention motion – but, rather, it was because of what was purportedly the *res judicata* effect of Hon. Furman's ruling. [A. 752]. The Court below held that since a default judgment was granted against Bulson, it was effectively a judgment against the plaintiffs-appellants.

The Court below addressed a branch of *res judicata*, "claim preclusion,"

11

finding that it was applicable to this matter:

> The doctrine precludes a plaintiff's claims when "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000)); *see Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 744 (N.Y. 2018) ("To establish claim preclusion" under New York law, "a party must show: (1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in the two actions."); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008).

[A. 752-53].

The Court below held that the requirements above had been "satisfied" in the case at bar because, "the Southern District action involved an adjudication on the merits." [A. 753]. The Court below also rejected the plaintiffs-appellants' "judicial estoppel" argument that Continental had taken inconsistent positions in opposing the motion to intervene and in supporting the motion to dismiss, i.e. initially arguing that intervention should be denied as the plaintiffs-appellants would not be prejudiced but then arguing that they were bound by the decision on that motion:

> Contrary to plaintiffs' arguments, principles of judicial estoppel do not prevent application of res judicata. "Judicial estoppel prevents a party from asserting a *factual position* in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding."

12

*Frost v. New York City Police Dep't*, 980 F.3d 231, 255 (2d Cir. 2020) (citation omitted) (emphasis added). Here, plaintiffs argue that Continental took a different legal position regarding the preclusive effect of a default judgment in opposing Industria's motion to intervene than it now takes. *See* Mem. in Opp'n to Mot. to Dismiss 11 (citing Mem. in Opp'n to Mot. to Intervene 9, No. 20-CV-3479 (S.D.N.Y.) (Dkt. #52)). But even assuming that Continental's legal positions are inconsistent, "[j]udicial estoppel applies only to 'inconsistent factual positions,' not to 'legal conclusions' advanced by a party." *Lego A/S v. Zuru Inc.*, No. 3:18-CV-2045 (AWT), 2023 WL 2727552, at *5 (D. Conn. Mar. 31, 2023); *see Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n., Loc. 38*, 288 F.3d 491, 504 (2d Cir. 2002) ("Local 38 has wavered concerning the practical ramifications of the union's strike upon the collective bargaining agreement, but such legal conclusions are not 'inconsistent factual positions' as would ordinarily justify judicial estoppel.") (citation omitted), *vacated on other grounds*, 538 U.S. 918 (2003); *see also Mazlin Trading Corp.v. WJ Holding Ltd.*, No. 19-CV-7652 (LTS), 2022 WL 20437016, at *3 n.6 (S.D.N.Y. Sept. 29, 2022); *cf. Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art*, 324 F. App'x 117, 119 (2d Cir. 2009) ("Even assuming that Cohen's former claim to La Visite is inconsistent, as a factual matter, with his current claim to the Botero, rather than simply an alternative legal theory, judicial estoppel does not apply.").

[A. 755-56].

Notably, the Court below only briefly addressed the explicit language of Hon.

Furman that held that his order would have no preclusive effect:

Plaintiffs also note Judge Furman's conclusion that "the default taken against Bulson would have no effect on [them]." *Id.* at 7. But "it is well established that '[r]es judicata protects wrong decisions as fully as right ones.'" *Male v. Tops Markets, LLC*, 354 F. App'x 514, 515 (2d

13

> Cir. 2009) (quoting *Friarton Estates Corp. v. City of New York*, 681 F.2d 150, 158 (2d Cir. 1982)); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). Accordingly, plaintiffs' challenges to the merits of Judge Furman's decision do not present a proper basis for escaping preclusion.

[A. 757-58].

Hon. Kovner did not otherwise address the explicit limitation set forth in the Order of Hon. Furman.

## **ARGUMENT**
## **POINT I**
## **STANDARD OF REVIEW**

Appellate courts "review a district court's dismissal under Fed. R. Civ. P. 12(b)(6) *de novo*, assessing whether the well-pleaded facts, accepted as true and with all reasonable inferences drawn in the plaintiff's favor, state a plausible claim for relief." <u>Militinska-Lake v. Kirnon</u>, ___ F.4th ___ (2nd Cir. November 15, 2023). This Court has similarly held, "Appellate courts review[] de novo a dismissal of a complaint under <u>Fed. R. Civ. P. 12(b)(6)</u>, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. This standard is well established." <u>Antrobus v. N.Y.C. Health</u>, ___ F.4th ___ (2nd Cir. October 13, 2023). "We review a district court's dismissal pursuant to <u>Rule</u>

14

12(b)(6) de novo, assessing 'the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in [plaintiff's] favor." Nexpoint Diversified Real Est. Trust v. ACIS Capital Mgmt., L.P., 80 F.4th 413, 417 (2nd Cir. 2023) *quoting* Syeed v. Bloomberg L.P., 58 F.4th 64, 67 (2nd Cir. 2023). *See also* New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo, 80 F.4th 158 (2nd Cir. 2023); Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd., 560 Fed. Appx. 52 (2nd Cir. 2014); Allaire Corp. v. Okumus, 433 F.3d 248 (2nd Cir. 2006).

Thus, the standard of review on an appeal of the decision by the Court below dismissing the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) is one involving a "*de novo*" review of the motion.

## POINT II

### THE RULING OF HON. FURMAN IN THE SOUTHERN DISTRICT ACTION MANDATED THAT IT NOT HAVE PRECLUSIVE EFFECT

In ruling on the plaintiffs-appellants' motion to intervene in the Southern District action, Hon. Furman clearly held that the outcome of the action commenced by Continental against Bulson would not prejudice the plaintiffs-appellants in a future action:

> *Under New York law, a default judgment entered against a party in one action does not have preclusive effect on a non-party to that action in a subsequent litigation.* (Citations omitted). *Thus, a default judgment in this action*

15

> would not impair Industria's or MBIC's interests in any
> meaningful way.

[A156-57] (emphasis added).

Continental did not appeal the ruling or the judgment in the Southern District Action. It is respectfully submitted that it follows that the Court below erred in disregarding Hon. Furman's ruling that the plaintiffs-appellants would not be precluded from bringing a direct action pursuant to N.Y. Ins. Law § 3420(b) because that ruling was the "law of the case;" and was incorporated into the Default Judgment. The "law of the case" doctrine provides:

> A decision on an issue of law made at one stage of a case
> becomes binding precedent to be followed in subsequent
> stages of the same litigation. The doctrine posits that when
> a court decides upon a rule of law, that decision should
> continue to govern the same issues in subsequent stages in
> the same case . . . [w]hile the doctrine is ordinarily applied
> in later stages of the same lawsuit, it also has application
> to different lawsuits between the same parties.

Liona Corp. v. PCH Assoc. (In re PCH Assoc.), 949 F.2d 585, 592 (2nd Cir. 1991).

Here, the order that denied the plaintiffs-appellants' motion to intervene was opposed by Continental and thus involved the "same parties." Further, Continental did not appeal Hon. Furman's finding, which thus became "law of the case." Thus, Hon. Furman's finding that the plaintiffs-appellants could bring a separate action was dispositive not only in the Southern District action but necessarily in the instant matter as well. A ruling cannot not have a *res judicata* effect when it was not the "law of the case" in the first place.

16

Further, Hon. Furman's ruling that the plaintiffs-appellants would not be bound by the Default Judgment was, in fact, incorporated into the Default Judgment. It is well-settled that the interlocutory rulings of a District Court judge are merged into that court's final judgment. *See, generally*, Gold v. NY Life Ins. Co., 730 F.3d 137, 144 (2nd Cir. 2013) *quoting* West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 781 (2nd Cir. 1999) ["Upon appeal from a final judgment concluding the action, earlier summary dispositions merge in the judgment and are reviewable"]. In turn, the Court below erred in not following Hon. Furman's earlier ruling that the plaintiffs-appellants would not be precluded from bringing the instant action. Rather, the Court below incongruously gave estoppel effect to the Default Judgment yet declined to give estoppel effect to Hon. Furman's ruling that plaintiffs-appellants' rights to pursue a declaratory judgment would *not* be "impaired" by the Default Judgment. The Court below thus deprived the plaintiffs-appellants - facing millions of dollars of exposure - of an opportunity to contest Continental's dubious disclaimer of coverage. *See infra*. They were denied intervention but were then denied the opportunity to pursue the declaratory judgment action.

Furthermore, by ignoring the explicit directive of Hon. Furman, the Court below implicitly ruled that a Judge does not have the authority to limit the *res judicata* effect of his or her own ruling. Under New York law, however, "[a] court has discretion to specify whether its order dismissing a claim is to have res judicata

17

effect (citations omitted)." <u>Stacey "O" v. Donald "P"</u>, 137 A.D.2d 965 (3rd Dept. 1988). It is respectfully submitted that there is no basis for asserting that Hon. Furman lacked the authority or discretion to limit the preclusive effect of his own ruling.

Here, Hon. Furman was explicit in holding that his ruling would be limited insofar as it would not prejudice the plaintiffs-appellants' rights to pursue a separate action against Continental. Yet, by dismissing the action, the Court below effectively ruled that Hon. Furman could not limit the reach of his own ruling. It is respectfully submitted that the Court below exceeded its own authority in giving *res judicata* effect to a ruling that held that it would have no such effect. The judgment of the Court below should therefore be reversed and the complaint should be reinstated.

## POINT III

**THE COURT OF APPEALS OF THE STATE OF NEW YORK HAS HELD THAT PRECLUSIVE EFFECT SHOULD NOT BE GIVEN TO A DEFAULT JUDGMENT AGAINST AN INSURED TORTFEASOR IN A DECLARATORY JUDGMENT ACTION PURSUANT TO N.Y. INSURANCE LAW §3420(b)**

Beyond the explicit ruling of Hon. Furman in denying the motion to intervene, the Court below erred in finding that the Default Judgment against Bulson was binding on the plaintiffs-appellants because applying New York law, New York courts have declined to afford *res judicata* effect to an insured's default judgment in

18

subsequent actions brought by a claimant pursuant to Ins. Law § 3420(b) and its predecessor statute. A discussed below, the cases cited by the Court below to support the proposition that a default judgment can have *res judicata* effect have no applicability to actions brought pursuant to Ins. Law § 3420(b).

In <u>Motor Veh. Acc. Indem. Corp. v. Natl. Grange Mut. Ins. Co.</u>, 19 N.Y.2d 115 (1967), the Court of Appeals of the State of New York, addressing the predecessor of N.Y. Ins. Law § 3420(b), Insurance Law, § 167, subd. 1, par. [b]; subd. 5, held that a default judgment could not be binding on a claimant bringing a direct action pursuant to Section 167:

> As a subrogee or privy of Bermudez, MVAIC would normally be bound by Bermudez's participation in an earlier lawsuit. (See, e.g., Liberty Mut. Ins. Co. v. Colon & Co., 260 N. Y. 305, 311.) However, this does not necessarily mean that, in the case before us, National is entitled to summary judgment on its affirmative defense of res judicata. Settled though the principle is that a question once tried out should not be relitigated between the same parties or their privies, the doctrine of res judicata, as we said in Commissioners of State Ins. Fund. v. Low (3 N Y 2d 590, 595), "must not be allowed to operate to deprive a party of an actual opportunity to be heard." Consideration of the situation in the present case demonstrates that such a full opportunity to litigate the validity of National's disclaimer cannot here be attributed to MVAIC. (See Minkoff v. Brenner, 10 N Y 2d 1030; Commissioners of State Ins. Fund v. Low, 3 N Y 2d 590, 595-596, supra.)

<u>Id.</u> at 119-120.

Likewise, in <u>W. St. Props., LLC v. Am. States Ins. Co.</u>, 124 A.D.3d 876 (2nd

Dept. 2015), the Appellate Division, Second Department declined to give preclusive

effect to a default judgment against an insured in a later action brought by a tort

claimant pursuant to N.Y. Ins. Law § 3420(b):

> Contrary to the American States defendants' contention, the plaintiff was not collaterally estopped from commencing this direct action against American States based upon the outcome of a separate declaratory judgment action. American States prevailed in that declaratory judgment action against the defendants in the underlying action, as reflected in an order of the Supreme Court, Westchester County (Liebowitz, J.), dated December 22, 2011, and an order of the same court (Colabella, J.), dated June 27, 2012, which determined that American States is not obligated to defend and indemnify the defendants in the underlying action. However, those orders were entered upon the underlying defendants' default, and thus, did not collaterally estop the plaintiff from bringing the instant, direct action against American States pursuant to Insurance Law § 3420 (a) (2).[2]

<u>Id.</u> at 878 *citing* <u>Zimmerman v. Tower Ins. Co. of N.Y.</u>, 13 A.D.3d 137, 140 (1st Dept.
2004) and <u>D'Arata v. New York Cent. Mut. Fire Ins. Co.</u>, 76 N.Y.2d 659, 664 (1990).

In <u>Am. Motorists Ins. Co. v. N. Country Motors, Ltd.</u>, 57 A.D.2d 158 (3rd Dept.

1977), the Appellate Division, Third Department held that an insured's default in an

earlier declaratory judgment action could not be given preclusive effect in a direct

---

[2] The decision refers to collateral estoppel rather than *res judicata*—concepts that are often conflated. However, despite the label given the preclusive doctrine applied, the posture of <u>W. St. Props. LLC</u> is indistinguishable from that here (i.e., it addressed whether an insured's default in a coverage action concerning a duty to defend or indemnify can be used to estop a tort claimant from litigating the issue of whether the insurer has a duty to defend or indemnify in a direct action brought pursuant to N.Y. Ins. Law § 3420(b)).

20

action later filed by the injured tort claimant pursuant to N.Y. Ins. Law § 3420(b)'s predecessor statute. The Court dismissed the insurer's argument that, "the default judgment has decided the [the insureds] would not have a claim under the policy … that the injured parties, standing in the shoes of the insured, can possess no claim against it." Id. at 160 (internal citations omitted). The Court relied on policy considerations in declining to give default judgments preclusive effect against injured claimants bringing a direct action against an insurer, stating:

> [T]he mischief that could be worked by this position [i.e., using an insured's default to deprive an injured party of an opportunity to contest coverage] has been recognized previously. A person concerned with the issue of insurance coverage cannot be deprived of an opportunity to be heard on that point by the default of another, and the doctrine of collateral estoppel or res judicata cannot be used to effectuate such an end.

Id. (Internal citations omitted).

Indeed, there are several other appellate-level decisions holding accordingly. See Tower Ins. Co. of NY v. Einhorn, 133 A.D.3d 841, 843 (2nd Dept. 2015) (refusing to give preclusive effect to insured's default judgment where "plaintiff moved for leave to enter a default judgment only against [the insured, and thus] any resulting judgment would bind only her, and may not be given preclusive effect to deprive the nondefaulting defendants of their right to litigate the issues pertaining to coverage as permitted by law in the appropriate forum"); Zimmerman, supra, 13 A.D.3d at

140 (1st Dept. 2004) (declining to accord preclusive effect to prior default judgment against claimant in an Ins. Law § 3420(b) action because "the matter of Tower's coverage of [its insured] has not been specifically litigated because the insured defaulted in the declaratory judgment action … [w]hile there was a hearing before a referee, it was necessarily one-sided as no one appeared for [the insured] and no party was allowed to intervene"). *See also* Arida v. Essex Ins. Co., 299 A.D.2d 902 (4th Dept. 2002) [Court refused to give preclusive effect to a settlement and release executed by the insured-tortfeasor].

In each of the decisions cited above, the insurer brought a declaratory judgment action against its insured seeking a declaration that it had no duty to defend or indemnify the insured-tortfeasor. In each decision, the Court refused to afford preclusive effect to the insured's default (or, in the case of Arida, *supra*, the insured's settlement and release). Accordingly, because the weight of authority in New York holds that an insured-tortfeasor's default in an earlier coverage action cannot be used to estop claimant from bringing a direct action pursuant to N.Y. Ins. Law § 3420(b), the decision of the Court below should be reversed and the complaint reinstated.[3]

---

[3] In any case, as a matter of public policy, New York courts routinely decline to give *res judicata* effect to an earlier judgment when to do so would deprive a party of an opportunity to be heard. *See e.g.* Commrs. of State Ins. Fund v. Low, 3 N.Y.2d 590, 595 (1958) [the "doctrines [of collateral estoppel and *res judicata*] must not be allowed to operate to deprive a party of an actual opportunity to be heard" (citations omitted)].

22

Notably in ruling contrary to the aforementioned case law, the Court below cited no authority supporting the application of *res judicata* to a default judgment in the context of an action brought pursuant to N.Y. Ins. Law §3420(b). While the Court below cited several decisions holding that a default judgment can have preclusive effect for *res judicata* purposes, those decisions are inapposite because: (a) none addressed whether a default judgment can have preclusive effect in an action brought pursuant to N.Y. 1ns. Law § 3420(b); and (b) the cases addressed scenarios in which the party to be precluded was itself the defaulting party in the earlier proceeding. *See* Clark v. Cavalry Portfolio Servs., 2017 US Dist LEXIS 213215, at *4 [S.D.N.Y. Dec. 28, 2017, No. 17 CV 99 (VB)] (applying *res judicata* to default judgment in a debt collection action where plaintiff: (a) was a party to the prior action; and (b) the claims he was now raising could have been brought in the earlier action); Eaddy v. U.S. Bank N.A., 180 A.D.3d 756, 758 (2ⁿᵈ Dept. 2020) ["judgment of foreclosure and sale entered upon the plaintiff's default in the foreclosure action encompassed all issues that were raised or could have been raised in that action, and precludes her from asserting the causes of action raised in this action"); Dekom v. Fannie Mae, 846 F. App'x 14, 19 (2ⁿᵈ Cir. 2021); Albanez v. Charles, 134 A.D.3d 657, 658 (2ⁿᵈ Dept. 2015) (giving *res judicata* effect to an order "issued in a declaratory judgment action granting the unopposed motion of the plaintiffs therein for leave to enter a default judgment against, *inter alia*, the

23

appellants, who were named defendants in that action, upon their failure to appear or answer the complaint in that action"). None of those decisions support a finding that the Default Judgment can have *res judicata* effect here and the Court below erred in holding otherwise.

Further, there is no law supporting the finding of the Court below that *res judicata* applies to the Default Judgment because the plaintiffs-appellants' rights are derivative of Bulson's. The cases cited by the Court below to support this proposition are wholly inapplicable because the decisions did not involve default judgments at all, but rather, matters in which the named insured appeared in the earlier action. *See* D'Arata v. NY Cent. Mut. Fire Ins. Co., 76 N.Y.2d 659, 667 (1990) [Applying collateral estoppel effect to guilty verdict from criminal trial stemming from shooting, which formed basis for insurance company's claim that exclusion for intentional acts in its policy applied to loss, noting that "[t]he verdict of guilty represents a conclusive finding that Luke's intention to injure plaintiff was established beyond a reasonable doubt," a higher standard than that applied in a civil action]; Oest v. Excelsior Ins. Natl.-Nedelanden N. Am. Prop. & Cas. Group, 170 Misc.2d 787, 788 (App. Term 2nd Dept.1996) [dismissing claimant's Ins. Law §3420(b) action where there was a prior declaratory judgment action against the insured that was a "conclusive final determination on the merits," and thus not on default]; Riv. View at Patchogue, LLC v. Hudson Ins. Co., 122 A.D.3d 824, 825 (2nd

24

Dept. 2014) [finding that collateral estoppel applied to bar claimant's direct action where "the issue considered and decided on the merits in the declaratory judgment action was identical to the issue presented in the instant action"]. *See also* Spencer v. Tower Ins. Group Corp., 130 A.D.3d 709, 710 (2nd Dept. 2015).

NY Cent. Mut. Fire Ins. Co. v. Kilmurray, 181 A.D.2d 40, 41 (3rd Dept. 1992) is likewise distinguishable. There, the Appellate Division found that a judgment from a declaratory judgment action in which the named insureds appeared to defend themselves applied to preclude the injured claimant from recovering pursuant to N.Y. Ins. Law § 3420(b). Significantly, the insurer also named the tort claimant to the action, as is required in New York.[4] While the Court held that the judgment would have future preclusive effect in any direct action brought under N.Y. Ins. Law § 3420(b), it noted that the claimant "as an interested party . . . could have sought to reopen the judgment on one of the grounds specified in CPLR 5015 (a)." Id. at 43. Here, however, Continental did not name the plaintiffs-appellants as interested parties in its declaratory judgment action, thereby depriving them of the opportunity

---

[4]United Services Auto. Ass'n v. Graham, 21 A.D.2d 657 (1st Dept. 1964) ["It is settled that 'an action for a declaratory judgment is brought to forever settle the rights of all parties interested, and, generally speaking, all persons who may be affected thereby must be joined as parties."]; J-T Associates v. Hudson River-Black River Regulating Dist., 175 A.D.2d 438, 440 (3rd Dept. 1991) ["A declaratory judgment serves a legitimate purpose only when all interested persons who might be affected by the enforcement of rights and legal relations are parties but not otherwise. A court may and ordinarily must refuse to render a declaratory judgment in the absence of necessary parties (citations omitted)."]

to be heard. As such, if anything, <u>Kilmurry</u> supports the proposition that Continental should have named the plaintiffs-appellants as defendants in its declaratory judgment action against Bulson.

Finally, it should be noted that allowing an insured-tortfeasor's default judgment to preclude a claimant from bringing a direct action against its insurer would frustrate the aims of N.Y. Ins. Law § 3420(b). As discussed *infra*, N.Y. Ins. Law § 3420(b) was enacted to permit a tort claimant to bring an action against an insurance company when the tortfeasor was insolvent. As this Court is aware, insolvent parties—parties that are usually judgment-proof— often do not appear to contest lawsuits filed against them.

Based on the foregoing, the Decision of the Court below should be reversed and the judgment vacated. As such, the plaintiffs-appellants respectfully request that this Court reverse the lower court's decision and vacate the judgment.

## POINT IV

### THE COURT BELOW ERRED IN FINDING THAT THE DOCTRINE OF JUDICIAL ESTOPPEL DID NOT APPLY TO THE INCONSISTENT LEGAL POSITIONS TAKEN BY CONTINENTAL

There is no question that Continental took inconsistent positions in opposing the motion for intervention in the Southern District action and the motion to dismiss in the within action. In opposing the plaintiffs-appellants' motion to intervene, Continental had argued that, "New York law is clear that a default judgment entered

26

against a party in one action does not have preclusive effect vis-à-vis a non-party to that action in a subsequent litigation." [A. 360]. Indeed, Hon. Furman necessarily agreed with that argument in his ruling denying the motion to intervene, holding that, "[u]nder New York law, a default judgment entered against a party in one action does not have preclusive effect on a non-party to that action in a subsequent litigation." [A.156-57]. In stark contrast, in support of its motion to dismiss, Continental reversed course and argued that, "under settled law, a 'default judgment . . . has *res judicata* effect equal to that of a judgment on the merits.'" [A. 314]. This is directly contrary to the argument it made - and benefitted from - before Hon. Furman. As set forth above, the Court below concurred with that argument and granted the motion to dismiss, albeit utilizing the incorrect standard.

In the decision granting Continental's motion to dismiss this action, the Court below held that, "[f]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." [A. 752]. Nevertheless, rejecting the plaintiffs-appellants' judicial estoppel claim, Hon. Kovner utilized the federal standard for judicial estoppel, holding that, "'[j]udicial estoppel prevents a party from asserting a *factual position* in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding.' *Frost v. New York City Police Dep't*, 980 F.3d 231, 255 (2nd Cir. 2020) (citation omitted) (emphasis added)." Id.

27

The Court below erred in not applying the New York standard for judicial estoppel to this matter, which involves questions of state law only. Under New York law:

> The doctrine of judicial estoppel, or estoppel against inconsistent positions, precludes a party who assumed a position in one legal proceeding and prevailed in maintaining that position from assuming a contrary position in another proceeding simply because the party's interests have changed" (Ghatani v AGH Realty, LLC, 181 A.D.3d 909, 911; see Capital One, N.A. v Trubitsky, 206 A.D.3d 608, 610). "For the doctrine to apply, there must be a final determination endorsing the party's inconsistent position in the prior proceeding" (Ghatani v AGH Realty, LLC, 181 A.D.3d at 911).

Cruz v Bank of N.Y. Mellon, 218 A.D.3d 638, 640 (2nd Dept. 2023).

In Cruz, the Appellate Division, Second Department applied the doctrine of judicial estoppel to a purely legal position:

> The borrowers moved, inter alia, to dismiss the complaint in the 2010 action arguing, among other things, that the Bank lacked standing, and the Supreme Court granted that branch of the motion on that basis. Accordingly, the borrowers are precluded from inconsistently asserting, in this action, that the Bank, in fact, had standing to commence the 2010 action, such that the commencement of that action started the statute of limitations running on the entire debt.

Id.

28

When the New York standard for judicial estoppel is applied, Continental is estopped from arguing that the Default Judgment precludes the plaintiffs-appellants from bringing this action. The elements were clearly met. Continental explicitly argued to Hon. Furman in opposition to the intervention motion that the Default Judgment would not have preclusive effect. Judge Furman adopted that position in his opinion denying the motion to intervene. Continental, because its interests have now changed, then undeniably shifted its position, arguing that the plaintiffs-appellants must be bound by the Default Judgment. This sort of legal gamesmanship should not have been countenanced by the Court below, if only in the interests of justice. As such, the judgment should be reversed and the complaint reinstated.

## POINT V

**THE JUDGMENT OF THE COURT BELOW SHOULD BE REVERSED BECAUSE ALLOWING A DEFAULT JUDGMENT AGAINST AN INSURED IN A PRIOR DECLARATORY JUDGMENT ACTION TO PRECLUDE A CLAIMANT FROM BRINGING A DIRECT ACTION PURSUANT TO N.Y. INS. LAW §3420(b) WOULD FRUSTRATE THE PUBLIC POLICY OBJECTIVES OF THE STATUTE**

It is respectfully submitted that preclusive effect should not be given to an insured-tortfeasor's default judgment in a direct action later brought by an injured tort claimant pursuant to N.Y. Ins. Law §3420(b) because to do so would frustrate the public policy aims of the statute. In Carlson v. Am. Intl. Group, Inc., 30 N.Y.3d 288 (2017) the Court of Appeals of the State New York held that N.Y. Ins. Law §3420

29

applies to policies covering risks in New York, even when they may not have been physically issued or delivered in New York. In so holding, the Court of Appeals examined the purposes and history of the statute:

> In 1917, the legislature created this statutory cause of action to remedy the inequity of the common-law rule that an injured person had no cause of action against the insurer of a tortfeasor and to protect the tort victims of New York (see Lang v Hanover Ins. Co., 353-354, 820 NE2d 855, 787 NYS2d 211 [2004]). "Generally, statutes designed to promote the public good will receive a liberal construction and be expounded in such a manner that they may, as far as possible, attain the end in view" (McKinney's Cons Laws of NY, Book 1, Statutes § 341, Comment). The overall legislative intent of Insurance Law § 3420 is to protect the tort victims of New York State, and the subsequent amendments to section 3420 were designed to expand the remedy, not to contract it.

Id. at 306-307. See also, Mineweaser v. One Beacon Ins. Co., 2018 US Dist LEXIS 91203, at *49, n 3 (W.D.N.Y. May 30, 2018, No. 14-CV-0585A(Sr)) [stating that N.Y. Ins. Law § 3420(b) "was enacted to address difficulties arising from the insolvency of a tortfeasor"].

Accordingly, giving preclusive effect to the Default Judgment against Bulson would be contrary to the law (see supra), but also be contrary to the "overall legislative intent" of N.Y. Ins. Law §3420. Further, it fails to recognize that tort claimants are involuntarily judgment creditors. They are not traditional assignees or subrogees who take rights because of an established and voluntary contractual relationship with the assignor or subrogor. They are individuals who have sustained

30

bodily injury, sometimes of the life-altering, catastrophic variety. Their encounters with the tortfeasors with whom they are in "privity" are often completely by chance (as in the case of a car accident, for example). The New York Legislature did not intend for N.Y. Ins. Law § 3420(b) to treat an injured claimant and involuntary judgment creditor the same as a corporation or other entity that voluntarily assumes certain contractual rights or liabilities. As noted in Carlson, it is codified under New York law that, "statutes designed to promote the public good will receive a liberal construction and be expounded in such a manner that they may, as far as possible, attain the end in view." Carlson, 30 N.Y.3d at 306-307 (*quoting* McKinney's Cons Laws of NY, Book 1, Statutes § 341, Comment).

It follows that permitting an insured's default to preclude an injured claimant or indemnitee from bringing a direct action against the insurer does not promote the public good. To the contrary: it leaves a party without redress to recover for his or her damages. As such, the judgment of the Court below should be reversed on the grounds that allowing an insured's default to be binding on a N.Y. Ins. Law § 3420(b) claimant is contrary to both the purpose of the statute and public policy.[5]

---

[5] The ruling of the Court below was premised on the assertion that the plaintiffs-appellants were in privity with Bulson in the Southern District action (even though the plaintiffs-appellants were suing Bulson for causing Wang's injuries). New York courts will not find parties to be in privity where it will lead to an unjust result: "Ultimately, New York courts focus on whether 'a finding of privity' that would preclude the later lawsuit 'strike[s] a fair result under the circumstances.'" Lipman v Rodenbach, 852 F. App'x 578, 581 (2nd Cir. 2021) *quoting* Matter of People of the State of NY, by Eliot Spitzer, as Attorney Gen. v. Applied Card Sys., Inc., 11 N.Y.3d 105 (2008).

Similarly, this Court should not create precedent that an insured's default in a coverage action can later be used to estop a claimant from recovering in a direct action pursuant to N.Y. Ins. Law. §3420(b). Doing so would create perverse incentives for unscrupulous insurers. For instance, if such an insurer was facing a large exposure that it did not want to pay, it could file a declaratory judgment action in the hope that the insured does not answer – hardly an unlikely possibility – and then use the default to avoid payment of a claim. Further, to avoid having anyone appear to contest the issue of coverage, the insurer could intentionally fail to name the underlying tort claimant and potential judgment creditor as a necessary party— even though required to do so. *See supra.* Giving estoppel effect to the named insured's default in a subsequently filed direct action would be contrary to the legislative intent of N.Y. Ins. Law § 3420(b) and the interests of justice and fairness. As such, this Court should reverse the lower court's finding that *res judicata* applies to the Default Judgment.

---

"Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding." Id. *quoting* Green v. Santa Fe Indus., Inc., 70 N.Y.2d 244, 514 N.E.2d 105, 108, 519 N.Y.S.2d 793 (N.Y. 1987). Here, it cannot be said that Bulson, clearly the plaintiffs-appellants' adversary in the underlying action, represented their interests in the Southern District action. In defaulting, Bulson neither represented its own interests nor the interests of any other party.

## POINT VI

## THE COURT BELOW ERRED IN APPLYING *RES JUDICATA* BECAUSE THE PLAINTIFFS-APPELLANTS HAVE INDEPENDENT CLAIMS THAT COULD NOT HAVE BEEN RAISED BEFORE HON. FURMAN

Beyond the reasons set forth above, the Court below also erred in finding that plaintiffs-appellants' claims are entirely derivative of Bulson's claims. *Res judicata* precludes a plaintiff's claims "when '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. (Citations omitted).'" [A.753]. The third element—that claims asserted by the plaintiffs-appellants could have been raised by Bulson in the prior action—precludes the application of *res judicata*. As set forth below, Continental failed to issue a timely denial of coverage to the plaintiffs-appellants—a claim that only the plaintiffs-appellants can raise—which precludes Continental from denying coverage.[6]

N.Y. Ins. Law § 3420(d)(2) provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle

---

[6] Continental may attempt to argue that Industria, et al. did not make any allegations regarding N.Y. Ins. Law § 3420(d)(2) in its State court complaint. New York is a notice pleading jurisdiction that is not subject to the heightened pleading obligations imposed in Federal Court. At worst, the plaintiffs-appellants should be granted leave to replead such claims in the event the instant appeal is denied.

33

> accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d)(2) [McKinney's 2024].

"An insurer's failure to provide notice as soon as is reasonably possible precludes effective disclaimer, even where the policyholder's own notice of the incident to its insurer is untimely." New York Cent. Mut. Fire Ins. Co. v. Aguirre, 7 N.Y.3d 772, 774 (2006) (internal quotation marks and citations omitted). Further, the "timeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." New York Cent. Mut. Fire Ins. Co., *supra*, 7 N.Y.3d at 774 (internal quotation marks and citations omitted). Moreover, where "the basis for denying coverage was or should have been readily apparent before the onset of the delay of disclaimer the insurer's explanation is insufficient as a matter of law." Id. (internal quotation marks and citations omitted).

The statute's timely disclaimer requirement applies to disclaimers premised on policy exclusions, but not to claims falling outside the scope of a policy's insuring agreement. Zappone v. Home Ins. Co., 55 N.Y.2d 131, 134 (1982). Significantly, the timely disclaimer requirement also applies to an insured's breach of a condition precedent to coverage. *See* JT Magen v. Hartford Fire Ins. Co., 64 A.D.3d 266, 274

34

(1st Dept. 2009) (Finding that "[c]ompliance with a proper notice-of-claim provision in an insurance policy is a condition precedent to all of an insurer's duty under the policy, including the duty to defend," and an insurer's denial premised on a breach of this provision must be issued as soon as reasonably possible or else it is waived pursuant to N.Y. Ins. Law § 3420(d)(2)]. Finally, courts have held that delays in disclaiming coverage of as little as 30 days are unreasonable as matter of law. W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co., 290 A.D.2d 278, 279 (1st Dept. 2002).

Where an insurer disclaims coverage based on an insured's breach of a condition precedent, it must issue a denial to all claimants entitled to notice under N.Y. Ins. Law § 3420(d)(2), not just the insured. "[T]he plain meaning of the quoted language [of § 3420(d)(2) providing that notice be provided to "any other claimant"] is that an insurer must give prompt written notice of disclaimer of liability or denial of coverage not only to the insured but also to any party that *has a claim against the insured arising under the policy.*" Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co., 27 A.D.3d 84, 90 (1st Dept. 2005) (emphasis in original) *citing* Hartford Acc. & Indemn. Co. v. J. J. Wicks, Inc., 104 A.D.2d 289, 293 (4th Dept. 1984) *app. dismissed* 65 N.Y.2d 691 (1985).

Thus, where an insurer denies coverage to its insured based on a breach of a condition precedent but fails to copy the claimant(s) on the denial letter, the insurer

35

has waived the right to rely on that defense vis-à-vis the claimant (notwithstanding the fact that there is no coverage for the named insured). In the case at bar, as discussed *infra*, Continental's basis for denying coverage is bereft of legal support since the law does not permit insurers to rescind or retroactively cancel workers' compensation and employers' liability policies because of material misrepresentations. Consequently, in an effort to avoid paying out a large claim in the underlying action, Continental alleged the novel (and legally dubious) theory that Bulson's failure to disclose Wang as an employee was a breach of a policy condition that permitted it to deny the claim that is the subject of this lawsuit.[7] It was on this premise Judge Furman granted the Default Judgment. As such, since its disclaimer was premised on Bulson's alleged breach of a condition precedent, Continental was obligated to issue a timely disclaimer to Industria, et al. and 2939, et al. pursuant to N.Y. Ins. Law §3420(d)(2). Yet, Continental failed to issue a denial at all. In its complaint against Bulson, Continental alleged that Wang was adjudged to be a Bulson employee by a decision issued by the New York State Workers' Compensation Board, dated November 14, 2017. [A. 103]. It was on this date – at the latest - that Continental became aware of the purported basis for disclaimer. However, Continental did not file its complaint seeking a declaration of no-coverage

---

[7] A reading of the Continental Policy's conditions section shows that this argument is likewise without merit. None of the five enumerated conditions references payroll reporting. [A. 110-39].

until May 2020 - two and a half years later.[8] The fact that Continental may have secured a default judgment has no bearing on its independent duty to have issued a timely disclaimer to the plaintiffs-appellants. <u>Bovis Lend Lease LMB, Inc.</u>, *supra*. As such, because the plaintiffs-appellants have claims in this action that could not have been raised by Bulson, *res judicata* has no applicability here.

## POINT VII

### RES JUDICATA SHOULD NOT HAVE BEEN APPLIED TO THE DEFAULT JUDGMENT BECAUSE CONTINENTAL PROVIDED INCORRECT INFORMATION ABOUT THE PREMIUMS CHARGED FOR ITS POLICY

In the Court below, the plaintiffs-appellants argued that the Default Judgment should not have been accorded *res judicata* effect because the Policy issued to Bulson was likely part of an unlawful insurance program for which the New York State Department of Financial Services ("DFS") fined Continental and its sister companies $3,000,000 pursuant to a Consent Order. [A. 590-605]. This is relevant because, as discussed below, as part of the program Continental's insureds were made to execute separate side agreements, called Reinsurance Participation Agreements (RPA's), with Continental's sister company, Applied Underwriters Captive Risk Assurance Company, Inc. ("AUCRA"). It was these agreements that

---

[8] In its complaint, Continental alleges it was providing coverage to Bulson subject to a reservation of rights. (A. 161-72). However, "[a] reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage." <u>Hartford Ins. Co. v .County of Nassau</u>, 46 N.Y.2d 1028, 1029 (1979).

governed the true premium paid by the insured, not the amount listed on the policy declarations. The Consent Order noted that the RPA's were neither filed with nor approved by DFS and were therefore illegal. Id. It further noted that in many instances the operation of the RPA's resulted in insureds paying far more in premium than is allowed by law (and the amount listed on the policy declarations). Id. Moreover, premiums were adjusted during the policy period based on claims made by the insured and premiums would increase as a result, often dramatically. Id.

Continental has claimed that the DFS fine "pertains to unrelated aspects of an insurance program of which such insurance coverage formed a part." [A. 711]. That statement is notable, however, for the apparent concession that the coverage was indeed a part of the "program" and the absence of an affidavit from anyone from the company itself to state otherwise. At the very least, such misconduct should not be rewarded with dismissal prior to discovery.

Continental's failure to disclose to Hon. Furman that the Policy was likely issued through a program sanctioned by the DFS was hardly a trifling oversight. This calls into question the veracity of the Declaration of Jeffrey Silver, secretary of Continental in the Southern District action, which made no mention of: (a) the RPA; (b) how much premium Bulson may have been charged thereunder (and how much premium was assessed as a result of the Wang claim); (c) whether Bulson was charged more than was permitted by law; (d) whether the premium was returned to

38

Bulson in connection with the enforcement action; (e) and whether the amount Bulson was charged exceeded the amounts that Continental subsequently claimed it would have charged for the Policy had it known Wang was a Bulson employee. [A. 488-92].

"Claims based on newly discovered evidence are not barred by *res judicata* when the newly discovered evidence was fraudulently concealed or . . . could not have been discovered with due diligence." King v. Galluzzo Equip. & Excavating, Inc., 2001 US Dist LEXIS 18344, at *32 (E.D.N.Y. Nov. 8, 2001, 00 CV 6247) (ILG)] *citing* L-TEC Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2nd Cir. 1999) and Saud v. Bank of NY, 929 F.2d 916, 920 (2nd Cir.1991). Based on this standard, the Default Judgment should not have been accorded *res judicata* effect. First, the fact that the Policy was likely part of the insurance program banned by the Department of Financial services could not have, with due diligence, been discovered earlier. The plaintiffs-appellants fortuitously discovered that the Policy was part of the program only when, in preparing opposition to Continental's motion to dismiss, counsel reviewed the underwriting guidelines and the Silver Declaration that supported Continental's default motion. These underwriting guidelines were very clearly for the sanctioned EquityComp and SolutionOne programs. As such, the plaintiffs-appellants should not be bound by the Default Judgment but, rather, should be able to obtain discovery and depose Mr. Silver on these issues.

More significantly, *res judicata* should not apply because Continental failed to disclose the existence of the RPA and how much Bulson may have paid thereunder. Continental was granted the Default Judgment on the basis of the assertion by Mr. Silver that, "[a]s set forth in the Continental Policy, the premium due from Bulson thereunder was to be calculated based on the payroll information provided by Bulson and the statutorily-approved insurance rates applicable to the classes of workers that Bulson employed."  [A. 489].  This is not how premiums were calculated under the sanctioned SolutionOne and EquityComp programs, however.

Mr. Silver misleadingly described the Policy as a guaranteed-cost policy.  As explained by the DFS in the Consent Order, under guaranteed-cost policies, "insurers charge a set premium based on identified employee classifications and corresponding payroll." [A. 592]. However, the Policy here may not have been the operative document that determined the premium charged: it was the RPA.  As explained by the DFS:

> Although the guaranteed-cost policy forms represented that "[t]he only agreements relating to this insurance are stated in this policy," to participate in the Program employers obtaining guaranteed-cost policies were required to sign the RPA's, which were related to the policies. The RPA's established a loss-sensitive formula, which modified and superseded the agreement established by the guaranteed-cost policies, operating similarly to a

> retrospective rated workers' compensation insurance policy.

[A. 593-94].

As noted in the Consent Order:

> While some New York employers paid less for coverage under the Program than they would have paid under the workers' compensation policies alone, some New York employers paid more for coverage under the Program than they would have paid under the workers' compensation policies alone, many significantly more.

[A. 593].

Thus, Bulson may very well have paid additional premiums during the policy period that were unwarranted. The Silver Declaration's failure to disclose that Bulson had executed an RPA, how much premium Bulson actually paid for the Policy, whether premium was returned to Bulson, etc., should foreclose the application of *res judicata* here.

It is surely possible that Bulson paid more in premium for the Policy than was allowed by law, thereby vitiating Continental's claim of what it would have charged for the Policy had it known of Mr. Wang's employment. It would be wholly inequitable to allow Continental to deny coverage under such circumstances and then rely on the doctrine of *res judicata* to maintain such a result. As such, the Default Judgment should not be binding upon the plaintiffs-appellants.

41

## POINT VIII

## TO THE EXTENT THAT THIS COURT IS NOT INCLINED TO REVERSE THE JUDGMENT OF THE COURT BELOW, IT SHOULD CERTIFY FOR REVIEW BY THE COURT OF APPEALS OF THE STATE OF NEW YORK WHETHER AN EMPLOYER'S FAILURE TO REPORT A WORKER WHEN PROCURING AN EMPLOYER'S LIABILITY POLICY IS A BASIS FOR A DENIAL OF COVERAGE

If this Court is not inclined to reverse the Court below, it is respectfully submitted that it should certify for review to the Court of Appeals of the State of New York the following question: Is an employer's failure to report a specific employee when procuring a Workers' Compensation and Employers' Liability policy a basis for denying employers' liability coverage altogether? Despite the fact that the standard form workers' compensation and employer's liability policy has been used in substantially the same form in this state for decades, it appears that neither the Court of Appeals nor the appellate Courts have addressed the aforementioned question. Local Rule 27.2(a) of this Court provides that, "If state law permits, the court may certify a question of state law to that state's highest court." State law does permit such a certification, 22 NYCRR §500.27. "Where 'unsettled and significant question[s] of state law . . . will control the outcome of a case,' … we may certify those questions to the New York Court of Appeals." Prats v. Port Authority of N.Y. and New Jersey, 315 F.3d 146, 150-51 (2nd Cir. 2002).

In the case at bar, as noted, there is no appellate authority supporting Continental's position. In turn, at the very least, it is respectfully submitted that this Court should certify for review the foregoing question to the Court of Appeals of the State of New York.

Had the plaintiffs-appellants been permitted to intervene in the initial action, they would have noted the overwhelming evidence that the cancellation requirements of Workers Compensation Law §54 apply to the employer's liability section of the Continental Policy. As will be discussed below, the rules of the New York Insurance Compensation Ratings Board ("NYCIRB"), the Workers Compensation Law, New York Insurance Law, and Opinions of the DFS, make it patently clear that any type of retroactive cancellation or denial of coverage is prohibited.

In Hon. Furman's decision, he relied on three appellate decisions to support the ruling that the employer's liability section of the Continental Policy did not need to comply with the cancellation provisions of WCL § 54. [A. 150-59]. However, these decisions are inapplicable, as none held that employer's liability benefits can be canceled retroactively or that the mandatory cancelation/termination provisions of WCL § 54(5) were inapplicable to EL benefits. *See* Am. Home Assurance Co. v. Highrise Const. Co., 111 A.D.3d 446, 447-48 (1st Dept. 2013); Preserver Ins. Co. v. Ryba, 10 N.Y.3d 635, 636 (2008) (treating a New York Workers' Compensation and

43

Employers Liability Policy as a unitary policy, noting that the New York Workers Compensation and Employers Liability Manual requires that insurance policies provide unlimited employers' liability coverage [in addition to unlimited workers' compensation coverage]"); West Bldg. Restoration Co. v. Lovell Safety Mgmt. Co., LLC, 61 A.D.3d 1095, 1101 (3rd Dept. 2009) (addressing question of whether a carrier owed out-of-state benefits to a worker injured in Massachusetts). As such, none of these decisions support the proposition that Continental was entitled to deny coverage based on Bulson's alleged failure to disclose Wang as an employee.

The notion that the employers' liability coverage part can be treated as its own policy that is not subject to the Workers Compensation Law or the rules of the NYICRB is incorrect. Workers Compensation Law § 54(4) requires that all EL policies issued in New York also provide WC coverage. That subsection provides, in pertinent part:

> Every contract or agreement of an employer the purpose of which is to indemnify him from loss or damage on account of the injury of an employee by accidental means, or on account of the negligence of such employer or his officer, agent or servant, shall be absolutely void unless it shall also cover liability for the payment of the compensation and for the payment into the special funds provided for by this chapter.

N.Y. Work. Comp. Law § 54(4) [McKinney's 2024].

44

Such "payment of compensation" includes employers liability benefits. As noted by the Department of Financial Service's Office of General Counsel, "pursuant to WCL § 54(4), no contract of insurance may provide coverage for employers' liability insurance if it does not also provide coverage for workers' compensation insurance." General Counsel Opinion 9-29-2000, 2000 WL 34630136 (N.Y. Ins. Bulletin). The opinions of the DFS, "if not irrational or unreasonable, will be upheld in deference to [the Superintendent of Insurance's] special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision." New York Pub. Int. Rsch. Grp., Inc. v. New York State Dep't of Ins., 66 N.Y.2d 444, 448 (1985).

Consistent with this, other Courts have found that various provisions of Workers Compensation Law §54 apply to both workers' compensation and employers liability coverages. *See, e.g*., Cont'l Ins. Co. v. Est. of Benton, 896 F.Supp. 272, 275 (N.D.N.Y. 1995) (dismissing argument that "§54 election requirement applies only to Part One of the WC policy. However, Part Two of the policy provides coverage only for 'bodily injury [arising] out of and in the course of the injured *employee's* employment by The Rigging Gang (emphasis added).' Therefore, Benton's status as an employee or employer is determinative under Part Two as well.").

45

Indeed, the Court of Appeals of the State of New York roundly dismissed the notion that the requirements of WCL §54 do not apply to the employer's liability coverage part:

> The statutory framework, taken as a whole, does not support Continental's position. Instead, Employers' Liability insurance is inextricably linked to Workers' Compensation coverage. First, the two types of coverage are jointly defined under the Insurance Law as comprehensively insuring employers, as such, for any and all types of claims for injury to or the death of an employee. Thus, Workers' Compensation and Employers' Liability insurance are defined as "insurance against the legal liability, under common law or statute or assumed by contract, of any employer for the death or disablement of, or injury to, his employee" (see Insurance Law § 1113 [a] [15]).
>
> Second, an insurance contract providing exclusively for Employers' Liability coverage, without correspondingly providing Workers' Compensation coverage, is void under Workers' Compensation Law § 54 (4) (see section 54 [4] [providing that "every contract or agreement of an employer the purpose of which is to indemnify him from loss or damage on account of the injury of an employee by accidental means, or on account of the negligence of such employer or his officer, agent or servant, shall be absolutely void unless it shall also cover liability for the payment of the compensation and for the payment into the special funds provided for by this chapter"].

Cont. Ins. Co. v State, 99 N.Y.2d 196, 199-200 (2002).

Further, the funds referenced in WCL §54(4) include the Workers Compensation Security Fund, created pursuant to WCL §107. The fund not only

46

provides coverage for workers compensation benefits but is also "used to pay for the employers' liability insurance portion of the state approved policy up to one million dollars on any one claim" in the case of an insurers insolvency or liquidation. § 17:9. Workers' compensation security Fund, 27 N.Y. Prac., Workers' Compensation § 17:9 (3rd ed.) (*citing* WCL §54(4)).

Finally, WCL §54(5), the section that prohibits retroactive cancellation or termination of benefits, states that "no contract of insurance issued by an insurance carrier against liability arising under this chapter shall be cancelled within the time limited in such contract for its expiration unless notice is given as required by this section." N.Y. Work. Comp. Law § 54 (McKinney's 2024). In referring to "this chapter," the law is referring to the entirety of the Workers' Compensation Law, some sections of which clearly address employer's liability coverage. Accordingly, it is patently clear that the cancellation requirements of WCL § 54(5) apply to the Policy.

Contrary to Continental's claims, employer's liability coverage exists separate and apart from other third-party liability policies; it exists to serve the policy aims of the Workers Compensation Law. The opinions of the DFS and the legislative history of the Workers Compensation Law demonstrate as much. In an opinion letter from 1988, the DFS stated:

47

> The coverage language contained within the approved New York State [WC] policy form, coverage B, Employers' liability section is clear and unambiguous. The [WC] carrier must ""'pay all sums'' that the insured employer is legally obligated to pay third parties with respect to an employee's injuries which arose out of and in the course of employment, provided that, both the insured employer and the employee are subject to the New York State [WCL].

General Counsel Opinion 6-28-88, 1988 WL 1502848 (N.Y. INS. Bulletin).

The letter also noted the rules of the New York Compensation Insurance Rating Board ("NYCIRB"), of which Continental is a member, mandate EL coverage:

> Sections 2305 and 2307 of the New York Insurance Law require that property and casualty carrier's rates and policy forms be filed with and approved by the Superintendent of Insurance. Section 2306 of the Insurance Law allows an insurer to discharge that rate and form filing obligation to a designated rate service organization. Virtually all [WC] carriers are members of the New York Compensation Insurance Rating Board. That rating board obtains all necessary approvals for its member insurers from the Department of Insurance. Furthermore, the Rating Board publishes a set of rules for its members which are approved by this Department. Rule VIII (2)

Id.

The 1988 letter finally noted that:

> [The] concept of unlimited coverage for employer liability is such a long-standing policy in this state that the Department has prohibited all property/casualty companies which underwrite commercial umbrella policies in this state from including in their rate and form

48

filings the computation of employer liability and workers' compensation for their umbrella premiums, (enclosed herewith Circular Letter #17 . . . In conclusion, the New York State Department of Insurance has never approved any limitation of coverage for employer liability under coverage B of the Workers' Compensation and Employers Liability Insurance Policy.[9]

Id.

Even more significantly, the Court of Appeals of the State of New York has explicitly ruled that the workers compensation portion and employer's liability portion of a workers compensation policy may not be treated distinctly, holding:

"Employers' Liability insurance is inextricably linked to Workers' Compensation coverage. First, the two types of coverage are jointly defined under the Insurance Law as comprehensively insuring employers, as such, for any and all types of claims for injury to or the death of an employee. Thus, Workers' Compensation and Employers' Liability insurance are defined as 'insurance against the legal liability, under common law or statute or assumed by contract, of any employer for the death or disablement of, or injury to, his employee' (*see* Insurance Law § 1113[a] [15] )."

Continental Ins. Co. v. State, 9 N.Y.2d 196, 199-200 (2002).

It is thus clear that employer's liability insurance is contemplated by, and part of, the Workers Compensation Law. It is not like other liability policies, which have

---

[9] *See* Insurance Law § 1113(15) for definition of "workers' compensation and employers liability policy."

49

monetary limits and rely on excess policies for increased coverage. The Insurance Law refers to a unitary definition of "workers' compensation and employers' liability insurance," which means, in pertinent part, "insurance against the legal liability, under common law or statute or assumed by contract, of any employer for the death or disablement of, or injury to, his employee." N.Y. Ins. Law § 1113(15) (McKinney's 2024). The definition contemplates payments to third parties for liability, not just the employee. Finally, the NYCIRB Rules note that no additional premium is charged for the EL coverage, demonstrating that it is not a separately purchased coverage or policy form, as Continental attempts to persuade the Court.

In turn, Continental has effectively sought a titanic shift in the law and practice in New York, one that will have lasting consequences for the New York construction industry. Building owners such as 2939, et al, are subject to strict liability under Labor Law §§240 and 241 for the acts of contractors performing construction work on their premises. Those statutes can subject them to massive liability, even though their liability is purely vicarious. In the case of a "grave injury" as defined by Workers Compensation Law §11 resulting in a substantial damages award, the consequences can be ruinous. The ability of these owners to sue an employer whose negligence caused a "grave injury" is often the only bulwark standing between the property owner and bankruptcy or foreclosure. Moreover, if an employer is deemed to have failed procure coverage (seemingly even though it paid premiums), it could

50

be subject to liability even in the absence of a "grave injury." Boles v. The Dormer Giant, Inc., 4 N.Y.3d 235 (2005).

Yet, were Continental's tactics to be deemed permissible, it would allow insurers to circumvent the Workers Compensation system in New York by permitting an insurer to avoid its coverage obligations merely because an employer is incorrect in its belief that a worker is employed by another entity, as was the case here.[10] Such a ruling would throw the New York Workers Compensation system (and legal system) into disarray, especially when considering the realities that some workers are hired as day laborers while others become "special employees" or are loaned to another company for a limited time. *See e.g.* Fuller v. KFG Land I, LLC, 189 A.D.3d 666 (1st Dept. 2020).

Efforts to circumvent the legislative scheme of the Workers Compensation Law have been consistently rejected as impermissible. Thus, the United States District Court for the Southern District of New York has held:

> Rosa [a prior case] is instructive in pointing out the conflicting results that may occur when a carrier seeks to perform an end-run around the carefully constructed workers compensation scheme. Here, as in Rosa, the carrier participated in the workers' compensation proceeding and a decision by this Court that the policy is void or that NorGuard is not responsible to pay Lopez' claim or indemnify NIL could conflict with the Boards'

---

[10]Graham Bruwer testified under oath that he believed that Mr. Wang was not his employee on the date of the incident. Mr. Wang conceded that he worked for Bulson "on and off." [A. 437].

51

resolution of Lopez' claim and/or NorGuard's application pursuant to N.Y. WCL § 25(1)(f). Moreover, it could put the burden of payment on the UEF without it or the Board having an opportunity to be heard. Accordingly, abstention is appropriate and provides an alternative ground for the dismissal of NorGuard's claim for declaratory relief.

Norguard Ins. Co. v. Lopez, 2017 WL 354209 (E.D.N.Y. 2017) *citing* Rosa v. June Electric Corp., 140 A.D.3d 1353 (3rd Dept. 2016).

Stated differently, "[a] party may not use a collateral court action to litigate issues within the province of the Board." N.Y. Prac. Torts §12:79, Liability of employer to employee injured in the course of employment--General scheme of Workers' Compensation Law. Here, Continental tellingly failed to appeal the ruling of the Workers Compensation Board with regard to Mr. Wang's employment status. Accordingly, if this Court is not inclined to reverse the Court below, it should certify the foregoing question to the Court of Appeals of the State of New York as the ruling on the case at bar has significant implications for the Workers Compensation system in the State of New York.

## **CONCLUSION**

For the foregoing reasons, it is respectfully submitted that this Court should reverse the Court below and reinstate the complaint in the within action together with such other relief as it deems just and proper.

Dated: New York, New York
      March 4, 2024

                                    /s/ Sim R. Shapiro

                                    Sim R. Shapiro
                                    STRIKOWSKY DRACHMAN
                                      & SHAPIRO, PLLC
                                    *Attorneys for Plaintiff-Appellants*
                                    111 Broadway, Suite 1103
                                    New York, New York 10006
                                    (212) 970-7111

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(I), and the word limit of Fed. R. App. P. 32(a)(7)(A), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,223 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

# SPECIAL APPENDIX

i

## TABLE OF CONTENTS

Page

Opinion and Order of the Honorable Rachel P.
    Kovner, dated September 21, 2023, Appealed
        From........................................................................ SPA-1

Judgment, dated September 22, 2023, Appealed
        From........................................................................ SPA-16

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
2939, LLC; DAVID WEISS; LINDA WEISS;
INDUSTRIA SUPERSTUDIO OVERSEAS,
INC.; INDUSTRIA WORLD LLC;
INDUSTRIA @ SEA, INC.; BORGO
GUGLIELMO, LLC; and MASSACHUSETTS
BAY INSURANCE COMPANY,

               Plaintiffs,

               v.

CONTINENTAL INDEMNITY COMPANY;
BULSON MANAGEMENT, LLC; RI XIAN
WANG; and MEI YING LIN,

               Defendants.
--------------------------------------------------------x

**MEMORANDUM AND ORDER**

21-CV-729 (RPK) (RML)

RACHEL P. KOVNER, United States District Judge:

     Plaintiffs 2939, LLC; David Weiss; Linda Weiss; Industria Superstudio Overseas, Inc.;

Industria World LLC.; Industria @ Sea, Inc.; Borgo Guglielmo, LLC; and Massachusetts Bay

Insurance Company filed this action, bringing breach-of-contract and declaratory-judgment claims

relating to Continental Indemnity Company's alleged obligation to defend and indemnify Bulson

Management, LLC in a state-court action filed by Ri Xian Wang and Mei Ying Lin.  Continental

moves to dismiss the complaint.  For the reasons explained below, the motion is granted.

## BACKGROUND

     The following facts are drawn from the complaint and documents amenable to judicial

notice.

     In July 2016, Ri Xian Wang fell from a ladder and suffered paralyzing injuries while

performing construction work for his employer, Bulson Management, LLC.  Compl. ¶ 15 (Dkt.

#1-1).  Wang and his wife, Mei Ying Lin, filed suit in New York state court against the construction

site's owners—2929 LLC; David Weiss; Linda Weiss; Industria Superstudio Overseas, Inc.; Industria World LLC; and Industria @ Sea, Inc. *Id*. at ¶¶ 15–16, *see* Am. Compl., *Wang v. 2939 LLC*, No. 519101/2016 (N.Y. Sup. Ct.) (Dkt. #11). The owners then filed a third-party complaint against Bulson, claiming that Bulson was liable for contribution and indemnity. Compl. ¶ 17; *see* Third-Party Compl., No. 519101/2016 (N.Y. Sup. Ct.) (Dkt. #18).

Meanwhile, Wang submitted a workers' compensation claim to the New York State Workers' Compensation Board, in which Wang asserted that he was one of Bulson's employees. *See* Compl. ¶¶ 23, 25, *Continental Indem. Co. v. Bulson Mgmt., LLC*, No. 20-CV-3479 (JMF) (S.D.N.Y.) (Dkt. #1). Prior to the accident, however, Bulson allegedly failed to disclose Wang as an employee on its payroll, and Bulson allegedly represented to its insurer, Continental Indemnity Company, that Wang was a subcontractor's employee. *Id*. at ¶¶ 24–25. The Workers' Compensation Board eventually determined that Wang was Bulson's employee and awarded him benefits. *Id*. at ¶ 28.

In May 2020, Continental sued Bulson in the Southern District of New York for breach of contract, fraud, unjust enrichment, and a declaratory judgment that Continental is not obligated to defend and indemnify Bulson in Wang's state-court action. *See id*. at ¶¶ 35–57. Continental alleged that Bulson had materially breached the terms of its insurance policy by failing to disclose that Wang was one of Bulson's employees. *Id*. at ¶¶ 1, 7. Bulson failed to appear, and Judge Furman set a schedule for Continental to move for default judgment. *See* Order Scheduling Default Judgment Briefing, No. 20-CV-3479 (S.D.N.Y.) (Dkt. #15).

Industria Superstudio Overseas, Inc.; Industria World LLC; Industria @ Sea, Inc.; Borgo Guglielmo, LLC (collectively "Industria"); and their general liability insurance provider, Massachusetts Bay Insurance Company, moved to intervene in the Southern District action. *See*

SPA-3

Mot. to Intervene & Not. of Mot. to Intervene, No. 20-CV-3479 (S.D.N.Y.) (Dkt. ##33, 51).  They argued that intervention was warranted because they might share liability with Bulson in Wang's state-court action and thus had a financial interest in the validity of Bulson's insurance policy.  *See* Mem. & Order 3, No. 20-CV-3479 (S.D.N.Y.) (Dkt. #58).

Judge Furman denied the motions, reasoning that intervention was unwarranted.  Judge Furman concluded that the movants were not entitled to intervene as of right because they did not have a "direct and significantly protectable interest in this litigation."  *Id.* at 5.  He observed that any interest of Industria and its insurer in the dispute over Continental's coverage of Bulson in Wang's state-court suit "depends on two contingencies" in the state-court case: "the success of Wang's claims against Industria *and* the success of Industria's third-party claims against Bulson."  *Ibid.*  In Judge Furman's view, that doubly-contingent interest was too remote and contingent to support intervention as of right.  Judge Furman concluded that intervention was not warranted under the "more holistic" standards for permissive intervention, based both on the movants' lack of a direct and protectible interest in the case before him, and based on the movants' "fail[ure] to demonstrate that their 'interest could be seriously impaired by the disposition of the litigation.'"  *Id.* at 7–8 (citation omitted).  In particular, he reasoned that "a default judgment in this action would not impair [the movants'] interests in any meaningful way," because "[u]nder New York law, a default judgment entered against a party in one action does not have a preclusive effect on a non-party to that action in a subsequent litigation."  *Id.* at 8.

Judge Furman then granted Continental's default-judgment motion.  The order declares that "Continental does not owe any duty to defend or indemnify Bulson" in connection with Wang's state-court action; that "Bulson is liable to Continental for fraudulent inducement, fraud, breach of contract, and unjust enrichment"; and that "Continental is hereby awarded damages in

3

the amount of $1,308,777.88, together with prejudgment interest." Default Judgment Order 2, No. 20-CV-3479 (S.D.N.Y.) (Dkt. #60). Bulson later appeared and moved to vacate the default, and Judge Furman denied the motion. *See* Op. & Order, No. 20-CV-3479 (S.D.N.Y.) (Dkt. #72). Judge Furman concluded "that Bulson was properly served with the complaints and that it lacks any meritorious defenses." *Id*. at 1; *see id*. at 8–17. No party appealed Judge Furman's rulings. *See generally Continental Indem. Co. v. Bulson Mgmt., LLC*, No. 20-CV-3479 (JMF) (S.D.N.Y.).

In December 2020, plaintiffs filed suit in New York state court. *See generally* Compl. The complaint names Continental, Bulson, Wang, and Lin as defendants, but it includes claims only against Continental. First, plaintiffs claim that "Continental's failure to comply with its obligation to fully defend and indemnify the defendant Bulson Management constitutes a breach of contract of the Workers' Compensation and Employer's Liability Insurance Policy issued by Continental" to Bulson. *Id*. at ¶ 22. Second, plaintiffs bring a "cause of action against Continental . . . for a declaratory judgment." *Id*. at 7 (capitalization altered). Plaintiffs request that the declaratory judgment state that Continental "is obligated to defend and indemnify Bulson" in Wang's state-court action and that it also "direct[] reimbursement by defendant Continental to the plaintiffs for all defense costs and attorney's fees expended in the defense of [Wang's state-court action] as well as damages, verdicts, judgments, costs, fees, penalties or expenses of any kind that plaintiffs may incur." *Id*. at ¶¶ 29–30.

Continental removed the action to federal court and filed a motion to dismiss the complaint. *See* Not. of Removal (Dkt. #1); Mot. to Dismiss (Dkt. #43). After the motion was fully briefed, the New York state court entered judgment in Wang's state-court action. *See* Letter with Copy of Judgment (Dkt. #48). The judgment provides that 2939 LLC; Industria Superstudio Overseas, Inc.; and Borgo Guglielmo, LLC are liable to Wang and Lin in the amount of $21,000,000. *Id*. at

5.  It also provides that Bulson is liable to 2939 LLC; Industria Superstudio Overseas, Inc.; and Borgo Guglielmo, LLC for common-law and contractual indemnification.  *Id*. at 5–6.  The parties have filed supplemental letters addressing the effect of the state-court judgment on this action.  *See* Continental's Supp. Letter (Dkt. #49); Pls.' Supp. Letter (Dkt. #50).  The letters note, among other things, that plaintiffs filed notice of entry of the state-court judgment on August 8, 2023.  *See* Continental's Supp. Letter 4–5.  Plaintiffs then filed a letter on September 20, 2023, stating that "[a] total of $5,000,000 of the judgment of indemnity has been paid by Bulson's general liability and excess insurers," "$16,000,000 of the judgment of indemnity plus attorneys' fees remain unsatisfied," and "no notice of appeal has been filed by any party . . . and the time in which to do so elapsed."  Sept. 20, 2023 Letter 1 (Dkt. #52).

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted."  To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8).  The facial "plausibility standard is not akin to a 'probability requirement.'" *Ibid.* (quoting *Twombly*, 550 U.S. at 556).  But it requires a plaintiff to allege sufficient facts to enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.*  In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Ibid.*  But it need not adopt "[t]hreadbare

SPA-6

recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Ibid*.

## DISCUSSION

The motion to dismiss is granted.

### I.      Plaintiffs Are Entitled to Bring this Suit

As a preliminary matter, plaintiffs are entitled to bring this suit.

In general, "[a] non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that 'clearly evidence[] an intent to permit enforcement by the third party' in question." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 485 N.E.2d 208, 213 (N.Y. 1985)); *see Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86–87 (2d Cir. 2014). "In the context of claims for breach of contract" under New York law, "a third-party beneficiary to a contract has standing to sue for breach," *Rynasko v. New York University*, 63 F.4th 186, 193–94 (2d Cir. 2023), but "[p]arties asserting third-party beneficiary rights under a contract must establish," among other things, "that the contract was intended for [their] benefit and . . . that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost," *Mendel v. Henry Phipps Plaza W., Inc.*, 844 N.E.2d 748, 786 (N.Y. 2006) (citation omitted). Here, there is no indication that plaintiffs were intended beneficiaries of Bulson's insurance contract, *see generally* Compl., or that the contract otherwise "evidence[d] an intent to permit enforcement by" plaintiffs, *Premium Mortg. Corp.*, 583 F.3d at 108.

However, New York Insurance Law Section 3420 provides a limited exception to the rule that non-parties to a contract lack standing to enforce the agreement. As relevant here, Section 3420 provides that "an action may be maintained . . . against [an] insurer upon any policy or

contract of liability insurance" by "any person who . . . has obtained a judgment against the insured . . . to enforce a right of contribution or indemnity." N.Y. Ins. Law § 3420(b)(2); *see Lang v. Hanover Ins. Co.*, 820 N.E.2d 855, 856 (N.Y. 2004) ("Insurance Law § 3420 grants an injured plaintiff the right to sue a tortfeasor's insurance company to satisfy a judgment obtained against the tortfeasor."). To bring a claim under Section 3420, a plaintiff "must first obtain a judgment against the tortfeasor, serve the insurance company with a copy of the judgment and await payment for 30 days." *Lang*, 820 N.E.2d at 858; *see* N.Y. Ins. Law § 3420(a)(2), (b). "Compliance with these requirements is a condition precedent to a direct action against the insurance company," *Lang*, 820 N.E.2d at 858, including in situations in which a plaintiff seeks "a declaratory judgment . . . concerning the extent of coverage, the duty to defend, or other issues arising from the insurance contract," *id*. at 857.

Here, Section 3420 confers standing upon plaintiffs to sue Continental for a declaratory-judgment regarding Continental's defense and indemnification obligations as well as to recover the judgment that plaintiffs obtained against Bulson in Wang's state-court action. Whether the requirements for seeking a declaratory judgment are satisfied is properly assessed at the time that the issue of a litigant's statutory standing is before the court, rather than at the time suit is brought. *See Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *Phelan v. City of Buffalo*, 388 N.Y.S.2d 469, 471 (App. Div. 1976). And while plaintiffs had not obtained a judgment against Bulson when they first brought this suit against Continental, plaintiffs obtained judgment against Bulson in the Supreme Court of the State of New York, Kings County, on their third-party claims for common-law indemnification and contractual indemnification on June 23, 2023, while this action was pending. *See* Letter with Copy of Judgment 4 (Dkt. #48). Plaintiffs then filed a notice of the entry of judgment on August 8, 2023, *see* Continental's Supp. Letter 4–5, and plaintiffs notified the

Court on September 20, 2023 that "[a] total of $5,000,000 of the judgment of indemnity has been

paid by Bulson's general liability and excess insurers" but that "$16,000,000 of the judgment of

indemnity plus attorneys' fees remain unsatisfied." Sept. 20, 2023 Letter 1.

Accordingly, plaintiffs have standing to maintain this action, and may bring their breach-

of-contract and declaratory-judgment claims.[1]

## II.        Plaintiffs' Claims Seeking to Vindicate Bulson's Rights Are Dismissed

Principles of res judicata preclude plaintiffs' claims for (i) breach of contract and (ii) a

declaratory judgment that Continental must defend and indemnify Bulson in Wang's state-court

action. "The preclusive effect of a federal-court judgment is determined by federal common law."

*Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). "For judgments in diversity cases, federal law

incorporates the rules of preclusion applied by the State in which the rendering court sits." *Id.* at

891 n.4.

Under one branch of res judicata—"the doctrine of claim preclusion"—"a final judgment

forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim

raises the same issues as the earlier suit.'" *Id.* at 892 (citation omitted). This doctrine protects

parties "from the expense and vexation attending multiple lawsuits, conserves judicial resources,

---

[1] Plaintiffs are incorrect in arguing that the federal and New York declaratory-judgment statutes independently confer standing to bring this action. *See* Mem. in Opp'n to Mot. to Dismiss 2 (Dkt. #37). "The Declaratory Judgment Act does not expand jurisdiction" or "provide an independent cause of action." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993); *see Lang*, 820 N.E.2d at 858 (stating the same principle as to New York law). Therefore, "a request for relief in the form of a declaratory judgment does not by itself establish a case or controversy involving an adjudication of rights." *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d at 731. In arguing to the contrary, plaintiffs rely on a line of New York Appellate Division cases "permit[ing] a party who, although not privy to [an] insurance contract, would nevertheless stand to benefit from the insurance policy to bring a declaratory judgment action to determine whether the insurer owed a defense and/or coverage under the policy." *Reliance Ins. Co. of New York v. Garsart Bldg. Corp.*, 505 N.Y.S.2d 160, 162 (App. Div. 1986); *see* Mem. in Opp'n to Mot. to Dismiss 8. But in *Lang*, the New York Court of Appeals clarified that this right derives from Section 3420, not the declaratory-judgment statute or common law. *See* 820 N.E.2d at 858. While several New York Supreme Court decisions even after *Lang* have continued to treat declaratory-judgment actions to resolve coverage disputes as freestanding common-law causes of action, that theory "is fundamentally inconsistent with *Lang*." *Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-CV-3266 (JFB) (WDW), 2014 WL 672926, at *1 (E.D.N.Y. Feb. 20, 2014).

and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).  The doctrine precludes a plaintiff's claims when "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (brackets omitted) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000)); *see Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 96 N.E.3d 737, 744 (N.Y. 2018) ("To establish claim preclusion" under New York law, "a party must show: (1) a final judgment on the merits, (2) identity or privity of parties, and (3) identity of claims in the two actions."); *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008).

These requirements are satisfied here.  First, the Southern District action involved an adjudication on the merits.  "[U]nder New York law, a default judgment . . . has *res judicata* effect equal to that of a judgment on the merits."  *Clark v. Cavalry Portfolio Servs., LLC*, No. 17-CV-99 (VB), 2017 WL 6757224, at *4 (S.D.N.Y. Dec. 29, 2017); *see, e.g.*, *Eaddy v. U.S. Bank Nat'l Ass'n*, 119 N.Y.S.3d 212, 214 (App. Div. 2020) ("A judgment by default that has not been vacated is conclusive for res judicata purposes.") (collecting cases); *Albanez v. Charles*, 20 N.Y.S.3d 567, 568 (App. Div. 2015) ("The doctrine [of claim preclusion] is applicable to an order or judgment taken by default which has not been vacated, as well as to issues which were or could have been raised in the prior proceeding.") (citation omitted); *Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021) (Under New York law, a "default judgment is a final judgment on the merits.").

Second, the privity requirement is satisfied.  Although plaintiffs were not parties to the Southern District action, a plaintiff suing an insurer pursuant to New York Insurance Law Section

3420 "does so as subrogee of the insured's rights and is subject to whatever rules of estoppel would apply to the insured." *D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 564 N.E.2d 634, 637 (N.Y. 1990); *see ibid.* ("[P]laintiff 'stands in the shoes' of the insured and can have no greater rights than the insured.") (citation omitted). "Thus, the inevitable consequence of plaintiff's election to proceed against defendant under Insurance Law § 3420(b)([2]) is that he is in legal privity with the claimed insured for the purpose of [preclusion] analysis." *Ibid.*; *see, e.g.*, *New York Cent. Mut. Fire Ins. Co. v. Kilmurray*, 585 N.Y.S.2d 599, 601–02 (App. Div. 1992); *Oest v. Excelsior Ins. Nat'l-Nederlanden N. Am. Prop. and Cas. Grp.*, 656 N.Y.S.2d 89, 89–90 (App. Div. 1996); *River View at Patchogue, LLC v. Hudson Ins. Co.*, 998 N.Y.S.2d 55, 57–58 (App. Div. 2014); *Spencer v. Tower Ins. Grp. Corp.*, 13 N.Y.S.3d 492, 493 (App. Div. 2015); *Phoenix Ins. Co. v. Modern Sprinkler Corp.*, No. 08-CV-1327 (AKT), 2011 WL 13305168, at *8 (E.D.N.Y. Mar. 18, 2011) (collecting cases).[2]

Finally, there is an "identity of claims" between this action and the Southern District action. *Paramount Pictures Corp.*, 96 N.E.3d at 744. New York has "adopted a 'transaction' test for resolving" whether "there is the requisite identity between an earlier cause of action and a later one." *Hodes v. Axelrod*, 515 N.E.2d 612, 616 (N.Y. 1987). "Under New York's transactional approach to [claim preclusion], 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different

---

[2] In the Southern District action, Judge Furman concluded that "[u]nder New York law, a default judgment entered against a party in one action does not have preclusive effect on a non-party to that action in a subsequent litigation." Mem. & Order 3, No. 20-CV-3479 (S.D.N.Y.). This is correct as to *issue* preclusion under New York law, which requires that an issue be "'actually litigated and determined' in a prior proceeding." *Kaufman v. Eli Lilly and Co.*, 482 N.E.2d 63, 68 (N.Y. 1985); *see ibid.* ("An issue is not actually litigated if, for example, there has been a default."). However, *claim* preclusion may be based on a default judgment. *See* pp. 9–10, *supra*. And of course, both claim preclusion and issue preclusion may operate to bar a party's privy from relitigating an issue. *See Paramount Pictures Corp.*, 96 N.E.3d at 744; *cf. Taylor*, 553 U.S. at 894 ("[N]onparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment.") (citation omitted).

theories or if seeking a different remedy.'" *Josey v. Goord*, 880 N.E.2d 18, 20 (N.Y. 2007). "[T]o determine whether two claims arise out of the same transaction or series of transactions, [the New York Court of Appeals has] held that courts should analyze whether the claims turn on facts that are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Simmons v. Trans Express Inc.*, 170 N.E.3d 733, 736 (N.Y. 2021) (citation and quotation marks omitted). This standard is clearly satisfied. The same claims that plaintiffs bring here—(i) that "Continental's failure to comply with its obligation to fully defend and indemnify the defendant Bulson Management constitutes a breach of contract of the [insurance policy] issued by Continental" to Bulson, Compl. ¶ 22; and (ii) that "Continental is obligated to defend and indemnify Bulson" in Wang's state-court action, *id*. at ¶ 29—were resolved in the Southern District action, *see* Default Judgment Order 2, No. 20-CV-3479 (S.D.N.Y.) ("[U]nder the [insurance policy] issued by Continental to Bulson . . . , Continental does not owe any duty to defend or indemnify Bulson in connection with the litigation pending against Bulson in [Wang's state-court action]," and "Bulson is liable to Continental for . . . breach of contract.").

Contrary to plaintiffs' arguments, principles of judicial estoppel do not prevent application of res judicata. "Judicial estoppel prevents a party from asserting a *factual position* in a legal proceeding that is contrary to a position previously taken by that party in a prior legal proceeding." *Frost v. New York City Police Dep't*, 980 F.3d 231, 255 (2d Cir. 2020) (citation omitted) (emphasis added). Here, plaintiffs argue that Continental took a different legal position regarding the preclusive effect of a default judgment in opposing Industria's motion to intervene than it now takes. *See* Mem. in Opp'n to Mot. to Dismiss 11 (citing Mem. in Opp'n to Mot. to Intervene 9, No. 20-CV-3479 (S.D.N.Y.) (Dkt. #52)). But even assuming that Continental's legal positions are

inconsistent, "[j]udicial estoppel applies only to 'inconsistent factual positions,' not to 'legal conclusions' advanced by a party." *Lego A/S v. Zuru Inc.*, No. 3:18-CV-2045 (AWT), 2023 WL 2727552, at *5 (D. Conn. Mar. 31, 2023); *see Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n., Loc. 38*, 288 F.3d 491, 504 (2d Cir. 2002) ("Local 38 has wavered concerning the practical ramifications of the union's strike upon the collective bargaining agreement, but such legal conclusions are not 'inconsistent factual positions' as would ordinarily justify judicial estoppel.") (citation omitted), *vacated on other grounds*, 538 U.S. 918 (2003); *see also Mazlin Trading Corp. v. WJ Holding Ltd.*, No. 19-CV-7652 (LTS), 2022 WL 20437016, at *3 n.6 (S.D.N.Y. Sept. 29, 2022); *cf. Zurich Am. Ins. Co. v. Felipe Grimberg Fine Art*, 324 F. App'x 117, 119 (2d Cir. 2009) ("Even assuming that Cohen's former claim to La Visite is inconsistent, as a factual matter, with his current claim to the Botero, rather than simply an alternative legal theory, judicial estoppel does not apply.").

Plaintiffs fare no better in arguing that res judicata does not apply because "the Default Judgment . . . shifted the burden to Bulson to vacate the judgment without the benefit of discovery, and thus was not on the merits," and "Plaintiffs did not have a full and fair opportunity to litigate" the default judgment. Mem. in Opp'n to Mot. to Dismiss 12. "The doctrine of *res judicata* is applicable to a default judgment that has not been vacated," regardless of whether a party moves unsuccessfully to vacate the default or whether discovery has occurred. *Clarkstown Recycling Ctr., Inc. v. Parker, Chapin Flattau & Klimpl, LLP*, 1 F. Supp. 2d 327, 329 (S.D.N.Y. 1998). And any requirement that "the person against whom the findings are asserted or his privy has had a full and fair opportunity to litigate," *Shore v. Parklane Hosiery Co., Inc.*, 565 F.2d 815, 819 (2d Cir. 1977), is satisfied because Bulson was properly served and had an opportunity to respond, *see Galin v. United States*, No. 08-CV-2508 (JFB) (ETB), 2008 WL 5378387, at *9 (E.D.N.Y. Dec.

SPA-13

23, 2008) ("The Second Circuit has found a full and fair opportunity to litigate even in cases where the estoppel is based on a default judgment against the estopped party.") (citing *Evans v. Ottimo*, 439 F.3d 278, 281 (2d Cir. 2006)); *see also Dekom v. Fannie Mae*, 846 F. App'x 14, 20 (2d Cir. 2021) ("Dekom there had a full and fair opportunity to properly litigate his claims. Dekom was properly served . . . and had an opportunity to respond to the summons, but he did not do so."). Indeed, Bulson eventually appeared and moved to vacate the default, and Judge Furman concluded that Bulson "lacks any meritorious defenses." Op. & Order 1, No. 20-CV-3479 (S.D.N.Y.).

Finally, plaintiffs cannot avoid the application of res judicata based on their challenges to the correctness of Judge Furman's ruling. Plaintiffs argue that (i) Continental waived the right to contest coverage because it did not raise fraud as a defense before the New York Workers' Compensation Board, Mem. in Opp'n to Mot. to Dismiss 13; (ii) Continental failed to add the Workers' Compensation Board as a party to the Southern District action, *ibid.*; (iii) Continental relied on inadmissible and non-probative evidence in arguing that Bulson materially breached its insurance policy, *id.* at 16; (iv) the proper remedy for a material misrepresentation is the cancellation, not retroactive denial, of an insurance policy, *ibid.*; (v) Continental's policy is "likely" subject to a Department of Financial Services consent order and could not be cancelled or voided without violating the terms of that order, *id.* at 20; and (vi) Judge Furman's order is contrary to public policy, *id.* at 23. Plaintiffs also note Judge Furman's conclusion that "the default taken against Bulson would have no effect on [them]." *Id.* at 7. But "it is well established that '[r]es judicata protects wrong decisions as fully as right ones.'" *Male v. Tops Markets, LLC*, 354 F. App'x 514, 515 (2d Cir. 2009) (quoting *Friarton Estates Corp. v. City of New York*, 681 F.2d 150, 158 (2d Cir. 1982)); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that

13

the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."). Accordingly, plaintiffs' challenges to the merits of Judge Furman's decision do not present a proper basis for escaping preclusion.

### III. Plaintiffs' Claim Seeking to Vindicate Their Own Rights Is Dismissed

Plaintiffs fail to state a claim for an order "directing reimbursement by defendant Continental to the plaintiffs for all defense costs and attorney's fees expended in the defense of" Wang's state-court action. Compl. ¶ 30. Such a claim arises, if at all, under New York Insurance Law § 3420, *see* pp. 6–8 & n.1, *supra*, which "grants an injured plaintiff the right to sue a tortfeasor's insurance company to satisfy a judgment obtained against the tortfeasor." *Lang*, 820 N.E.2d at 856; *see* N.Y. Ins. Law § 3420(b)(1). The New York Court of Appeals has explained that this provision exists to "remed[y] th[e] inequity" caused by the common-law rule that a plaintiff who "acquired a judgment against the insured and the insured failed to satisfy the judgment due to insolvency" could "not sue the insurance company directly because there was no privity of contract between plaintiff and the insurance carrier." *Lang*, 820 N.E.2d at 857. "[T]he effect of the statute is to give to the injured claimant a cause of action against an insurer for the same relief that would be due to a solvent principal seeking indemnity and reimbursement after the judgment has been satisfied. The cause of action is no less but also it is no greater." *Lang*, 3 N.Y.3d at 858 (citation omitted).

Plaintiffs' claim fails because, as discussed above, *see* pp. 8–14, *supra*, Bulson has no right to defense or indemnification under the insurance policy issued by Continental. "Under Section 3420, 'the creditor's rights are no greater or less than those of the insured debtor, and recovery cannot exceed the policy limits.'" *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 179 (2d Cir. 2010) (citation omitted); *see Lang*, 820 N.E.2d at 858 (stating that Section 3420 allows an injured

SPA-15

party to "step[] into the shoes of the tortfeasor" and "assert any right of the tortfeasor-insured against the insurance company") (citation omitted); *McCormick & Co., Inc. v. Empire Ins. Grp.*, 878 F.2d 27, 29 (2d Cir. 1989) ("McCormick's statutory right to maintain this action is coextensive with, though not exceeding, that which Empire's insured, Jay Storage, would have had if it had paid the initial judgment and sued for indemnity under the policy.  Accordingly, in order to prevail, McCormick must establish that Empire is liable to Jay Storage under the insurance policy.") (internal citations omitted).  Because Bulson has no right to recover against Continental, neither do plaintiffs.

**CONCLUSION**

Defendant's motion to dismiss is granted.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:  September 21, 2023
        Brooklyn, New York

15

SPA-16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X,

2939, LLC, DAVID WEISS; LINDA WEISS;
INDUSTRIA SUPERSTUDIO OVERSEAS
INC.; INDUSTRIA WORLD LLC;
INDUSTRIA @ SEA, INC.; BORGO
GUGLIELMO, LLC; and MASSACHUSETTS
BAY INSURANCE COMPANY,

     Plaintiff,        JUDGMENT
                21-CV-00729(RPK)(RML)

   V.

CONTINENTAL INDEMNITY COMPANY;
BULSON MANAGEMENT, LLC; RI XIAN
WANG; and MEI YING LIN,

     Defendant,

-------------------------------------------------------- X

   A Memorandum and Order of the Honorable Rachel P. Kovner, United States District

Judge, having been filed on September 21, 2023, granting Defendant, Continental Indemnity

Company's motion to dismiss; it is

   ORDERED and ADJUDGED that the Defendant, Continental Indemnity Company's

motion to dismiss is granted; judgment is entered in favor of Defendant, Continental Indemnity

Company's; and this case closed.

Dated: Brooklyn, NY        Brenna B. Mahoney
   September 22, 2023      Clerk of Court


            By: _/s/Erin Espinal___
             Deputy Clerk